57 CCPA

**Application of Virgil W. VOGEL and Paul W. Vogel.**

**Patent Appeal No. 8198.**

United States Court of Customs and Patent Appeals.

March 5, 1970.

Rehearing Denied June 11, 1970.

Harvey B. Jacobson, Jacob Shuster, Washington, D. C., attorneys of record, for appellants.

Joseph Schimmel, Washington, D. C., for Commissioner of Patents, Fred W. Sherling, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN, LANE, Judges, and MATTHEWS, Senior Judge, United States District Court for the District of Columbia, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the rejection of all claims (7, 10 and 11) in appellants' patent application serial No. 338,158, filed January 16, 1964, for "Process of Preparing Packaged Meat Products for Prolonged Storage."

The ground of rejection for each claim is double patenting, based upon the claims of appellants' U.S. patent 3,124,462, issued March 10, 1964, in view of a reference patent to Ellies, Re. 24,-992, reissued May 30, 1961. No terminal disclaimer has been filed.

## THE APPEALED CLAIMS

Claims 7 and 10 are directed to a process of packaging meat generally. Claim 10 is illustrative:

10. A method for prolonging the storage life of packaged meat products comprising the steps of: removing

meat from a freshly slaughtered carcass at substantially the body bleeding temperature thereof under ambient temperature conditions; comminuting the meat during an exposure period following slaughter while the meat is at a temperature between said bleeding and ambient temperatures; sealing the comminuted meat within a flexible packaging material having an oxygen permeability ranging from 0.01 x $10^{-10}$ to 0.1 x $10^{-10}$ cc.-mm/sec/cm²/cm Hg at 30°C. during said exposure period and before the meat has declined in temperature to the ambient temperature; and rapidly reducing the temperature of the packaged meat to a storage temperature below the ambient temperature immediately following said packaging of the meat.

The invention is based on appellants' discovery that spoilage and discoloration of meat are markedly accelerated if the meat is allowed to reach ambient temperature before packaging.

Claim 11 is directed to a similar process specifically limited to beef.

## PRIOR ART

The only reference of record is Ellies. Ellies teaches the use of meat-packaging material having the oxygen permeability range recited in the claims.

## THE PATENT

Appellants' patent, which is not prior art, claims a method of processing pork. Claim 1 of the patent is illustrative.

1. A method of preparing pork products, comprising the steps of: boning a freshly slaughtered carcass while still hot into trimmings; grinding desired carcass trimmings while still warm and fluent; mixing the ground trimmings while fluent and above approximately 80°F., mixing to

be completed not more than approximately 3½ hours after the carcass has been bled and stuffing the warm and fluent mixed trimmings into air impermeable casings.

## THE BOARD

The board characterized the rejection as follows:

The sole ground of rejection is that claims 7, 10 and 11 are unpatentable over appellants' copending patented claims in Vogel et al., in view of Ellies. This is a double-patenting type rejection, whose statutory basis is 35 U.S.C. 101, as indicated in In re Ockert, 44 CCPA 1024; 1957 CD 404; 722 OG 222; 245 F.2d 467; 114 USPQ 330.

Thus the board viewed this case as involving "same invention" type double patenting. The board then discussed the differences between the appealed claims and the patent claims and found that the former did not define a "patentable advance" over the latter. It is thus clear that the board was not at all dealing with "same invention" type double patenting but with the "obvious variation" type.[1] The board found that the appealed claims merely extended the pork process to beef, and that this was not a "patentable advance." Such language states only a conclusion, since patentability is the very issue to be determined. The board gave the following analysis to support its conclusion:

We agree with the Examiner's reasons for holding the application of the claimed method to beef to be an unpatentable adaptation. In addition, the definition of "sausage" in Webster's 3rd New International Dictionary of 1963, on page 2019 is pertinent:

"sausage—a highly seasoned finely divided meat that is usually a

---

1. The examiner's final rejection and the solicitor's oral argument contend that only a single invention is involved. They go on to point out the *differences*. Apparently they were thinking that "invention"

means "patentable invention." This has not been the language of the law since January 1, 1953. See 35 U.S.C. §§ 102, 103.

mixture (as of beef or pork)
* * *"

The examiner's reasons as stated in his answer were that the process steps are essentially the same, and the choice of beef rather than pork "is of no patentable significance since this would appear to be a judicious choice of available meat products, well within the ordinary skill of the art, and particularly so, in the absence of any unusual or unobvious result."

The board's use of the dictionary meaning of "sausage," as above quoted, is apparently intended to show that beef and pork are equivalents. Whatever may be their equivalency in other contexts, the dictionary definition of "sausage" does not show that beef and pork are equivalents in the sense of the invention now claimed. Appellants contend·that the examiner and the board used the *disclosure* of the patent as a basis for concluding obviousness. To the effect that consideration of the patent disclosure is improper in testing for obvious-type double patenting, appellants cite In re Baird, 348 F.2d 974, 52 CCPA 1747 (1965).

## OPINION

The proceedings below in this case indicate the advisability of a restatement of the law of double patenting as enunciated by this court.

■ The first question in the analysis is: Is the same invention being claimed twice? 35 U.S.C. § 101 prevents two patents from issuing on the same invention. See, e. g., In re Boylan, 392 F.2d 1017, 55 CCPA 1041 (1968). As we have said many times, "invention" here means what is defined by the claims, whether new or old, obvious or unobvious; it must *not* be used in the ancient sense of "patentable invention," or hopeless confusion will ensue. By "same invention" we mean identical subject matter. Thus the invention defined by a claim reciting "halogen" is not the *same* as that defined by a claim reciting "chlorine," because the former is broader than the latter. On the other hand,

claims may be differently worded and still define the same invention. Thus a claim reciting a length of "thirty-six inches" defines the same invention as a claim reciting a length of "three feet," if all other limitations are identical. In determining the meaning of a word in a claim, the specification may be examined. It must be borne in mind, however, especially in non-chemical cases, that the words in a claim are generally not limited in their meaning by what is shown in the disclosure. Occasionally the disclosure will serve as a dictionary for terms appearing in the claims, and in such instances the disclosure may be used in interpreting the coverage of the claim. In re Baird, supra. A good test, and probably the only objective test, for "same invention," is whether one of the claims could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention. This is essentially the test applied in In re Eckel, 393 F.2d 848, 55 CCPA 1068 (1968). There the court rejected the idea of "colorable variation" as a comparison category and stated that inventions were either the same, or obvious variations, or unobvious variations. The court's holding in *Eckel* was that same invention means identically same invention.

■ If it is determined that the same invention is being claimed twice, 35 U. S.C. § 101 forbids the grant of the second patent, regardless of the presence or absence of a terminal disclaimer. If the same invention is not being claimed twice, a second question must be asked.

■ The second analysis question is: Does any claim in the application define merely an obvious variation of an invention disclosed and claimed in the patent? In considering the question, the patent disclosure may not be used as prior art. In re Boylan, supra; In re Aldrich, 398 F.2d 855, 55 CCPA 1431 (1968). This does not mean that the disclosure may not be used at all. As pointed out above, in certain instances it may be used as a dictionary to learn the meaning of terms in a claim. It may

also be used as required to answer the second analysis question above. We recognize that it is most difficult, if not meaningless, to try to say what is or is not an obvious variation of a claim. A claim is a group of words defining only the boundary of the patent monopoly. It may not describe any physical thing and indeed may encompass physical things not yet dreamed of. How can it be obvious or not obvious to modify a legal boundary? The disclosure, however, sets forth at least one tangible embodiment within the claim, and it is less difficult and more meaningful to judge whether that thing has been modified in an obvious manner. It must be noted that this use of the disclosure is not in contravention of the cases forbidding its use as prior art, nor is it applying the patent as a reference under 35 U.S.C. § 103, since only the disclosure of the invention claimed in the patent may be examined.

■ If the answer to the second question is no, there is no double patenting involved and no terminal disclaimer need be filed. If the answer is yes, a terminal disclaimer is required to prevent undue timewise extension of monopoly.

We now apply this analysis to the case before us.

■ The first question is: Is the same invention being claimed twice? The answer is no. The patent claims are limited to pork. Appealed claims 7 and 10 are limited to meat, which is not the same thing. Claims 7 and 10 could be infringed by many processes which would not infringe any of the patent claims. Claim 11 is limited to beef. Beef is not the same thing as pork.

We move to the second question: Does any appealed claim define merely an obvious variation of an invention disclosed and claimed in the patent? We must analyze the claims separately.

■ As to claim 11 the answer is no. This claim defines a process to be performed with beef. We must now determine how much of the patent disclo-

sure pertains to the invention claimed in the patent, which is a process to be performed with pork, to which all the patent claims are limited. The specification begins with certain broad assertions about meat sausages. These assertions do not support the patent claims. The patent claims recite "pork" and "pork" does not read on "meat." To consider these broad assertions would be using the patent as prior art, which it is not. The specification then states how the process is to be carried out with pork. This portion of the specification supports the patent claims and may be considered. It describes in tabular form the time and temperature limits associated with the pork process. Appealed claim 11, reciting beef, does not read on the pork process disclosed and claimed in the patent. Further, we conclude that claim 11 does not define merely an obvious variation of the pork process. The specific time and temperature considerations with respect to pork might not be applicable to beef. There is nothing in the record to indicate that the spoliation characteristics of the two meats are similar. Accordingly, claim 11 does not present any kind of double patenting situation.

■ Appealed claim 10, supra, will now be considered. It recites a process to be performed with "meat." "Meat" reads literally on pork. The only limitation appearing in claim 10 which is not disclosed in the available portion of the patent disclosure is the permeability range of the packaging material; but this is merely an obvious variation as shown by Ellies. The answer to the second analysis question, therefore, is yes, and the claim is not allowable in the absence of a terminal disclaimer. The correctness of this conclusion is demonstrated by observing that claim 10, by reciting "meat," includes pork. Its allowance for a full term would therefore extend the time of monopoly as to the pork process. It is further noted that viewing the inventions in reverse order, i. e. as though the broader claims issued first, does not reveal that the narrower

(pork) process is in any way unobvious over the broader (meat) invention disclosed and claimed in the instant application. The same considerations and result apply to claim 7.

The decision of the board is *affirmed* as to claims 7 and 10 and *reversed* as to claim 11.

Modified.