59 CCPA

**Application of James B. SWETT.**
**Patent Appeal No. 8575.**

United States Court of Customs and Patent Appeals.
Dec. 9, 1971.

Worley, C. J., concurred in result.

Paul R. Wylie, Los Angeles, Cal., Lawrence I. Field, Arlington, Va., attorneys of record, for appellant. Leigh B. Taylor, Ridgewood, N. J., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. John

**632**

W. Dewhirst, Fairfax, Va., Elliot A. Goldberg, Arlington, Va., of counsel.

Before WORLEY, Chief Judge, and RICH, ALMOND, BALDWIN, and LANE, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals, adhered to upon reconsideration, affirming the rejection of the claim in appellant's design application[1] on the ground of double patenting in view of the claims in appellant's utility patent.[2]

The design application is for a lunch box container as illustrated in Figs. 1, 2 and 4. The five additional figures in the design application mainly illustrate in greater detail the features shown in the reproduced figures, which, for purposes of the discussion herein, should be sufficient.

F I G. I

F I G. 2

F I G. 4

[A4503]

The utility patent is also directed to a lunch box container. Since in double patenting situations it is proper to consider only the claims involved, we think

1. Serial No. 4,512 filed November 2, 1966.

2. U. S. Patent 3,391,816, July 9, 1968, filed November 4, 1966.

it unnecessary to discuss what is disclosed in this patent. However, in order to aid in understanding the claims, we reproduce Figs. 2 and 3 of that patent:

## FIG. 2

[A4504]

## FIG. 3

The patent claims, which are the basis for the double patenting rejection, read as follows:

1. A sealable storage container of substantially rectangular configuration comprising a pair of similarly shaped side walls in opposed relationship to each other, said sidewalls being interconnected to each other by end walls and a bottom wall, said sidewalls being transversely outwardly centrally bowed away from each other so as form a container of an intermediately greater width, said side walls and end walls adapted to form a tight seal with a cover therefor, and an upright imperforate divider member having an upright flange at either side thereof, each of said flanges being of a vertically concave configuration and comprising side finger portions laterally extending from each other, said divider member being freely positionable between said sidewalls longitudinally

thereof from a generally central position wherein only the outer portions of said fingers are in contact with said sidewalls to positions increasingly proximate said end walls wherein said fingers are proportionately increasingly inwardly flattened by said sidewalls into increasingly greater contact therewith

2. A storage container according to claim 1, further comprising a closure adapted to form a tight seal with said container.

3. A storage container according to claim 2, wherein said closure and said divider contact along the entire lateral extent of said divider between said sidewalls.

4. A storage container according to claim 2, wherein the walls of said container terminate in an outwardly flared peripheral rim and said closure terminates in a downwardly opening U-shaped peripheral rim adapted to engage the rim of said container in tight sealing relationship.

5. A storage container according to claim 1, wherein said divider has a foot segment on the lower edge thereof said foot segment being formed as a flange normal to the main wall of said divider, said flange providing stable resting support for said divider.

Initially the design application was rejected solely under 35 USC 103 over the prior art. The examiner in his Answer added a double patenting rejection based on the claims in appellant's utility patent, stating:

Since claims 1–5 of applicant's utility patent (newly cited reference) present a word picture of the design claimed herein, the claims of necessity must over-lap being directed to the same lunch box with slidable divider as shown in full lines on the drawing.

Hence, since the utility invention as defined by the claims cannot be made without infringing the design, double patenting exists and two patents cannot issue.

On appeal, the board reversed the rejection under § 103 but affirmed the double patenting rejection. In response to appellant's arguments that the design application and utility patent claims were not for the same invention because they each covered structures not encompassed by the other, the board opined:

Consideration of the claims in the mechanical patent appears to us to support the Examiner's position and refute appellant's arguments as to unlimited shaped [sic] being encompassed thereby. It rather appears to us that claim 1 limited to rectangular configuration and bowed sides rather expressly defines the disclosed article and leaves little to constitute an express field of difference for a further design patent.

Appellant first contends that there can be no "same invention" type of double patenting in a design-utility situation since the respective claims are not analyzable in the same manner. In addition, appellant contends that "same invention" double patenting rejections may not be made in such situations since double patenting rejections between design and utility claims are based on judicial doctrine grounded on the public policy that abhors improper extensions of monopoly. In that regard, appellant states that extension of monopoly is not possible in the present case since the board's affirmance of the double patenting rejection in the design application (having as a maximum a fourteen-year term) came less than five months after the issuance of his seventeen-year utility patent.[3] Lastly, appel-

3. We note that appellant's utility patent issued July 9, 1968 and that, because of the delays involved in appealing to this court, there would be an extension of monopoly if obviousness-type double patenting is adjudged to exist and if appellant, pursuant to 35 USC 173 and Rule 155, elects a fourteen-year term.

lant argues that even if a "same invention" type double patenting rejection is possible in design-utility situations, it is not appropriate here because in fact the same invention is not being twice claimed.

The solicitor responds by asserting that it is immaterial that no timewise extension of monopoly will result since a "same invention" type of double patenting rejection is involved. The solicitor also notes that, in comparing the claims of the utility patent with the claim in the design application, the Patent Office has taken the position that the claims in the utility patent "present a word picture of the design claimed," which the solicitor contends is true under any "reasonable" reading of the claims.

■ This court has previously stated that there is no statutory basis for double patenting rejections in design-utility situations. In re Thorington, 418 F.2d 528, 57 CCPA 759 (1969). However, in *Thorington* the court went on to state that double patenting rejections in such situations, both of the "same invention" type and the "obviousness" type, are judicially sanctioned. The double patenting rejection in this case is of the "same invention" type, and, like "same invention" type double patenting rejections in utility-utility or design-design situations, we think such rejections may be proper even where no timewise extension of monopoly is involved. *Cf.* In re Vogel, 422 F.2d 438, 57 CCPA 920 (1970); *see also*, In re Barber, 81 F.2d 231, 23 CCPA 834 (1936). The question in this case, therefore, boils down to whether the "same invention" is actually being twice claimed.

■ While, as appellant points out, it is not easy to compare utility word claims with design picture claims in determining if the "same invention" is being claimed, we do not think the mere difficulty of the task should dissuade us from attempting such comparisons. Nor do we agree with appellant that there never can be a claiming of the "same invention" in design-utility situations. We do realize that such double patenting may be rare in view of the stringent tests set forth by this court for determining what is the "same invention." *See, e. g.*, In re Vogel, supra. In fact, we think the claims presented in this case come close to being directed to the "same invention." Certainly there is an overlap between what is called for in the utility patent claims and what is shown in the design application. However, as was said in *Vogel*, a mere overlap is not equivalent to claiming the "same invention," rather the claims must be directed to identical subject matter. The claims in this case are not, in our opinion, directed to identical subject matter.

■ A reading of the claims in appellant's utility patent indicates that there are certain container structures encompassed by these claims which are not the same as the container structures shown in the design application. Appellant in his brief has illustrated containers with features called for by the utility patent claims which features are different from those shown in the design application. While we agree with the solicitor that some of appellant's claim interpretation is "unreasonable," we are impressed with several quite reasonable distinctions. For example, claim 1 of the utility patent calls for "an upright imperforate divider member having an upright flange at either side thereof." This clearly includes a flange formed on only the upper or lower part of the divider edge, while the design application is limited to a flange which runs the full height of the divider.

Likewise, claim 2 of the utility patent calls for "a closure adapted to form a tight seal with said container." The design drawing shows a separate closure, whereas the claim clearly covers a "flip-

In such an event, we think appellant could file a terminal disclaimer to over-

come the "obviousness-type" double patenting rejection.

top" closure. These differences are illustrated by appellant's exhibit A which falls within the utility patent claims but looks nothing like the design claim:

[A4505]

It is apparent that the utility patent claims cover many other structures which are also completely different from those claimed in the design application.

Considering the differences between the claims from another viewpoint, we note that the design application shows a divider member which may be considered stationary, and yet the utility patent claims are limited to a divider which is "freely positionable between said sidewalls longitudinally thereof." Likewise, there is no indication in the design application that the "finger" portions of the divider member are flexible, whereas the utility patent claims side finger portions which are "proportionately increasingly inwardly flattened" when the divider is moved toward an end of the container.

Since these differences, and possibly many others, do exist between the claims in the utility patent and the claim in the design application, we do not think the "same invention" is being twice claimed. Therefore, we *reverse* the board's decision.

Reversed.

WORLEY, C. J., concurs in result.