**ANCHOR HOCKING CORPORATION,**
Plaintiff,

v.

**The EYELET SPECIALTY COMPANY,**
Defendant.

Civ. A. No. 4703.

United States District Court,
D. Delaware.

May 9, 1974.

James M. Mulligan, Jr., of Connolly, Bove & Lodge, Wilmington, Del., for plaintiff.

Douglas E. Whitney and William H. Sudell, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., and Roy C. Hopgood and Stephen B. Judlowe of Sandoe, Hopgood & Calimafde, New York City, of counsel, for defendant.

## OPINION AND ORDER

LATCHUM, Chief Judge.

■ This action is presently before the Court on a motion by the defendant Eyelet Specialty Company ("Eyelet") for partial summary judgment declaring United States Patent No. 3,744,655 on a "safety closure for containers" (the "utility patent") assigned to Anchor Hocking Corporation ("Anchor") to be invalid for double patenting. Jurisdiction is conferred by 28 U.S.C. § 1338(a).

The undisputed facts relevant to the present motion are as follows: On February 23, 1971, Frank Nixdorff, Jr. ("Nixdorff") filed a patent application (Serial No. 118,212), seeking a design patent on an ornamental design for a locking ring for a container closure.[1] The application issued on January 23, 1973 as United States Design Patent No. D 226,054 (the "design patent") and was assigned to Anchor from its date of issue.

On July 8, 1971, Nixdorff also filed a patent application (No. 160,737) seeking a utility patent on a "safety closure for containers." The application issued on July 10, 1973 for the utility patent in suit and was assigned to Anchor from its issue date.

The design patent, the first to issue, contained the following claim: "I claim: The ornamental design for a locking ring for a container closure, substantially as shown and described." The speci-

fication comprised the following figures:

*Fig.2.*   *Fig.3.*

*Fig.1*

*Fig.4*

accompanied by the following description:

"FIG. 1 is a side elevational view of a locking ring for a container closure showing my new design;

FIG. 2 is a top plan view;

FIG. 3 is a view looking from the right of FIG. 2; and

FIG. 4 is a side elevational view showing the side opposite that seen in FIG. 1 with a portion of the container being shown in broken lines for illustrative purposes only."

The utility patent, the second to issue, had fifteen claims, claim one of which is

---

1. A locking ring for a container closure may be generally defined as an article of manufacture which is used in conjunction with containers such as medicine bottles and which functions to make the containers ex-tremely difficult to open by unauthorized users such as children while still allowing the containers to be readily opened by authorized users who have been instructed in the operation of the locking ring.

illustrative of the subject matter claimed:

"1. A locking ring for container closures comprising a body for fitting on the neck of a container, mounting means on said body for preventing relative rotation between said body and the container, a tab connected to and extending away from body, at least one locking tooth on said tab for engagement with locking elements on the closure, and a cut away portion between adjacent portions of said tab and said body to comprise a hinged connection of said tab to said body whereby said tooth may be moved up and down into and out of engagement with the locking elements on the clo-sures, said body including a rim portion, said rim portion being made of a stiff non-pliable material which is maintained stationary when affixed to the neck of the container, said rim being less than a full circle having spaced ends disposed near each other, said tab being integral and coplanar with said rim, and said tab being disposed between said open ends of said rim and said tab whereby said rim and tab together extend substantially 360° around the container neck."

Its specifications contained a word description of the functional operation of the locking ring supplemented by a number of drawings including the following:

■ Eyelet contends that the issuance of the later utility patent in view of the earlier design patent amounts to double patenting. Double patenting is a doctrine of patent law which, most simply stated, prevents a single patentee from obtaining two patents on the "same invention." The doctrine was discussed in detail by the United States Supreme Court in Miller v. Eagle Manufacturing Co., 151 U.S. 186, 198, 14 S.Ct. 310, 315, 38 L.Ed. 121 (1894) where the Court stated:

"The result of the foregoing and other authorities is that no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ; that the second patent, although containing a broader claim, more generical in its character than the specific claims contained in the prior patent, is also void; but that where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby and claims made thereunder, its validity may be sustained.

In the last class of cases it must distinctly appear that the invention covered by the later patent was a separate invention distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent. If the case comes within the first or second of the above classes, the second patent is absolutely void."

In particular, Eyelet contends that it is undisputed (1) that Figures 15, 16, 17 and 18 of the utility patent depict the figure of a locking ring identical to the locking ring disclosed in the earlier issued design patent and (2) that certain claims [2] of the utility patent "cover the closure of the design patent." Based on these two undisputed facts, Eyelet then argues in effect that the Court must conclude as a matter of law on the present motion for summary judgment that the two patents are for the "same invention," and that being so, the later issued utility patent is invalid under the double patenting doctrine because it results in an illegal extension of the patent monopoly.

■ While the two so-called unrefuted facts are relevant to determining whether double patenting has occurred, standing alone they are not conclusive that the patents were issued for the same "invention" as condemned in *Miller*. For example, drawings of a design patent and a utility patent may be identical and still the two patents may possibly be directed to separate inventions as sanctioned in *Miller*. This is so because while the scope of the invention of a design patent is dependent on the drawings disclosed therein, the scope of the invention covered by a utility patent is defined by the language of the claims of the utility patent. The drawings in a utility patent are related to the scope of the invention covered by the claims only to the extent that the drawings are needed to clarify the utilitarian aspect of the invention encompassed by the claims. See Application of Vogel, 422 F.2d 438, 441–442 (Cust. & Pat.App. 1970). Thus, the specifications of a utility patent may disclose a particular article of manufacture which illustrates an embodiment of a novel utilitarian aspect of invention to support the claims of a utility patent while at the same time that same article of manufacture may also illustrate an independently novel ornamental aspect of invention which is itself the valid subject of a design

2. This undisputed fact is drawn from Nixdorff's deposition when he testified that the language of each recited element in Claims 1, 2, 3, 4, 6, 8 and 9 of the utility patent was broad enough to read on the elements of the locking ring disclosed in the figure of the design patent. Docket Item 38, pp. 324–336.

patent. This, of course, is a contrary inference which arises from the fact that the drawings of the utility and design patents are identical.

 Furthermore, the second so-called undisputed fact, that the claims of the utility patent "cover the closure of the design patent," is also not necessarily conclusive of double patenting. Anchor contends that the first issued design patent was directed, as 35 U.S.C. § 171 provides, to the ornamental aspect of the invention embodied in the disclosed article of manufacture. Anchor also contends that the subject of the second utility patent is directed to an independent utilitarian aspect of invention, one embodiment of which is also illustrated by the same article of manufacture. The fact that the claims of the later issued utility patent read on the disclosure of the earlier issued design patent is the necessary result of using one article of manufacture to illustrate both utilitarian and ornamental aspects of invention. The ability to make such a reading is not conclusive that the utilitarian aspect of invention claimed in the second utility patent was the same invention as the ornamental aspect of the first design patent. See, *Miller*, supra at 201 of 151 U.S., 14 S.Ct. 310.

Thus, on the present record the Court is unable to conclude that the only rational inference that may be drawn from the two undisputed facts is that the two patents were issued for the "same invention" as proscribed by *Miller*. It is also possible on this present limited record to draw the inference that the patentee used a single article of manufacture to illustrate two separate and distinct inventive concepts—one being the novel appearance of the locking ring which may be a valid subject of a design patent and the other being a novel utilitarian aspect of the locking ring which may be the valid subject of a utility patent.

When inconsistent or opposing inferences may reasonably be drawn from the undisputed facts as to which reasonable men might differ, the case

may not be determined on a motion for summary judgment. The determination of which inference is correct calls for a factual determination when a fuller record has been developed after an evidentiary hearing. Eyelet's motion for summary judgment will be denied.