ROPAT CORPORATION,
Plaintiff-Appellant,

v.

McGRAW–EDISON COMPANY, and
Marshall Field & Company,
Defendants-Appellees.

Nos. 75–1571, 75–1572.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 5, 1976.

Decided May 13, 1976.

Rehearing Denied June 4, 1976.

---

Richard R. Trexler and Caliste J. Alster, Chicago, Ill., for plaintiff-appellant.

Bruce B. Krost, Cleveland, Ohio, Dallett Hoopes, Waterbury, Conn., Clarence J. Fleming, James Van Santen, Chicago, Ill., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and SPRECHER, Circuit Judges.

CASTLE, Senior Circuit Judge.

The sole question presented in these appeals is whether utility patent No. 3,611,-910, assigned to plaintiff-appellant Ropat Corporation and relating to a "pop-flip-serve" corn popper is invalid due to double patenting over the prior issued design patent No. 206,674, also assigned to Ropat and relating to a corn popper.

### I.

The design patent was issued on January 10, 1967 and claims "The ornamental design for a corn popper substantially as shown" and includes the following diagrams:

FIG. 1       FIG. 2

It was granted for a term of 14 years.

The utility patent was subsequently issued nearly five years later, on October 12, 1971, for a term of 17 years.[1] Its claims describe a corn popper primarily composed of a base and cover.[2] The base contains a

---

1. No terminal disclaimer was filed by the patentee or appellant at any time.

2. Claim 2 of the utility patent is representative:
  2. A corn popper comprising:

shallow cooking vessel or pan and a heating element. The dome cover is described as possessing a volume substantially greater than that of the pan so that the corn rises and fills the dome as it is popped. The dome has a flat top so that the popper may be inverted, the base removed, and the popped corn served from the dome. The utility patent includes the following diagrams:

FIG. 1          FIG. 2

Ropat brought suit against various defendants, including appellees McGraw-Edison Company and Marshall Field & Company, for infringement of the utility patent. Appellees raised the defense of double patenting in their motion for summary judgment, arguing that the utility patent was invalid because both it and Ropat's earlier issued design patent claimed the "same invention." Appellees maintained that the utility patent unlawfully extended by an additional eight years Ropat's monopoly which it received by the issuance of the design patent. The district court granted summary judgment in favor of appellees,

a. a base;
b. means for supporting said base in popping position on a flat surface;
c. a pan arranged in said base for containing unpopped kernels of popcorn, when said base is in said popping position;
d. heating means arranged in said base for heating said pan to pop said kernels;
e. a single piece dome separately supported on said base over said pan when said base is in said popping position;
f. the inside volume of said pan being substantially less than the volume of a full charge of popped corn for said popper;
g. the inside volume of said dome being several times the inside volume of said pan

finding that "the utility patent invention is inherent in the design patent" and hence "the two inventions [claimed in the two patents] are identical."[3] 393 F.Supp. 1108, 1110 (N.D.Ill.1975). Ropat appeals. We affirm.

## II.

The judicially-created rule against double patenting, emanating from the early Supreme Court decision in *Miller v. Eagle Manufacturing Company*, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121 (1894), is "based upon the idea that the power to create a

so that said popped corn rises into said dome; and
h. the uppermost surface of said dome in said popping position being formed with at least three substantially spaced points lying approximately in a plane parallel with said flat surface so that said dome stably supports itself and said base on a flat surface in a position inverted from said popping position for removal of said base from said dome and serving of said popped corn in said dome.

3. Plaintiff's suits against four other alleged infringers have been stayed in the district court pending the disposition of these appeals.

monopoly is exhausted by the first patent, and that a new and later patent for the same invention would operate to extend or prolong the monopoly beyond the period allowed by law." *J. R. Clark Company v. Jones & Laughlin Steel Corporation*, 288 F.2d 279, 281 (7th Cir. 1961); see also *Application of Thorington*, 418 F.2d 528, 536, 57 C.C.P.A. (1969). The patent laws, of course, provide that a design patent and a utility patent may well be issued on the same construction. See 35 U.S.C. §§ 101 (utility), 171 (design).[4] However, each such patent must claim a separate, distinct patentable invention. *In re Barber*, 81 F.2d 231 (Cust. & Pat.App. 1936).

■■■ In order to determine whether the "same invention" is claimed in two patents, their claims must be compared to determine whether they define the same subject matter. *Application of Vogel*, 422 F.2d 438, 441, 57 C.C.P.A. 920 (1970). And when the double patenting situation involves a design patent and a utility patent, we recognize that it is "not easy to compare utility word claims with design picture claims in determining if the 'same invention' is being claimed." *Application of Swett*, 451 F.2d

631, 635, 59 C.C.P.A. 726 (1971). In comparing their claims, the mere use of the same design claimed in the design patent as the vehicle for describing the utility claimed in the utility patent is not dispositive. *Anchor Hocking Corp. v. Eyelet Specialty Company*, 377 F.Supp. 98, 101 (D.Del.1974); *Appel v. Lilling*, 60 F.Supp. 749 (S.D.N.Y. 1945).

The law of double patenting in the precise situation where a design patent and a utility patent are involved is plagued by a dearth of case law. A review of the cases which do exist reveals various "tests" for determining whether a design patent and a utility patent claim the "same invention." We believe the best formulation of the applicable standard in this situation is that set forth in such decisions as *In re Hargraves*, 53 F.2d 900 (Cust. & Pat.App. 1931), and *Application of DuBois*, 262 F.2d 88, 46 C.C. P.A. 744 (1958). Those cases state that double patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa.[5] See also *In re Barber, supra*, 81 F.2d at 232; *In*

4. Section 101 provides:
   Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.
   Section 171 provides in part:
   Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

5. See generally Gambrell, *Mechanical and Design Inventions: Double Patenting Rejections and the Doctrine of Election*, 45 N.Y.U.L.Rev. 441 (1970). Appellees primarily rely on one line of cases applying the general rule that double patenting exists if the design claimed in the first-to-issue design patent cannot be employed without infringing the utility patent. See *Application of Thorington, supra*, 418 F.2d at 537; *Illinois Tool Works, Inc. v. Solo Cup Company*, 179 U.S.P.Q. 322, 368 (N.D.Ill.1973); *Tractor Supply Company v. International Harvester Company*, 155 U.S.P.Q. 420 (N.D.Ill. 1967); Deller's Walker on Patents 70 (2d ed., 1969–70 Cum.Supp.). On the other hand, Ro-

pat cites a second line of cases which apply the rule that double patenting has not occurred if the second-to-issue utility patent encompasses designs other than the design claimed in the first-to-issue design patent. See *Application of Swett*, 451 F.2d 631, 59 C.C.P.A. 726 (1971); *Anchor Hocking Corporation v. Eyelet Specialty Company*, 377 F.Supp. 98 (D.Del.1974); *Mr. Hanger, Inc. v. Cut Rate Plastic Hangers, Inc.*, 372 F.Supp. 88 (E.D.N.Y.1974); *Regent Jack Manufacturing Company v. United States*, 292 F.2d 868, 155 Ct.Cl. 222 (1961). A third "test" for "same invention" double patenting is whether one of the claims being compared could be literally infringed without literally infringing the other; if it could be, the claims do not define identical subject matter. See *Application of Vogel*, 422 F.2d 438, 57 C.C.P.A. 920 (1970); *Application of Avery*, 518 F.2d 1228, 1232 (Cust. & Pat.App. 1975). We are of the opinion, however, that these imprecise formulations do not represent useful independent "tests" of double patenting in the design-utility situation. Rather, we believe that they constitute corollaries to and can only be properly applied with reference to the basic standard enunciated in *Hargraves* and *DuBois*.

re *Phelan*, 205 F.2d 183, 184, 40 C.C.P.A. 1023 (1953).

## III.

In the instant case, it is readily apparent that the features in which the novel esthetic effect reside are the identical features which produce the novel function claimed in the utility patent. The novel feature constituting the design claimed in the design patent is the large flat-top dome cover, the volume of which is greater than that of the cooking pan in the base. This novel design feature clearly produces the novel "pop-flip-serve" function which forms the essence of the utility patent claims.

Ropat insists, however, that its design is directed to the ornamental appearance of the structure shown in the design patent; namely, the precise shape of the dome and base as well as the shape and placement of the handles and legs. Ropat points out that these aspects are nowhere described or claimed in the utility patent. Thus, Ropat argues that double patenting has not occurred in the instant situation since the invention claimed in the utility patent can be constructed without "copying" the precise shape of the dome, base, handles, or legs claimed in the design patent. These contentions, however, are irrelevant. Double patenting in the design-utility situation cannot turn on niceties of precise ornamentation (see, e.g., *Application of DuBois, supra; Appel v. Lilling, supra* ), but rather must turn on the presence or absence of design features which produce the novel function claimed in the utility patent. If narrow, non-functional decorative variations which contribute in no way to the novel function were allowed to enter the inquiry, it would become virtually impossible ever to find double patenting in the design-utility situation. The narrow concept of "design" present in 35 U.S.C. § 171 cannot be used to preclude double patenting in such circumstances. It is immaterial that the design patent is "replete" with ornamental features which are neither de-

scribed nor claimed in the utility patent. A design patent and a utility patent need not claim every incidental feature of the other in order for both to claim the "same invention."

Ropat contends, however, that the district court improperly "read into" the design patent a feature not claimed or described which was crucial to its double patenting finding; namely, the shallow cooking pan in the base. Ropat maintains that the novel "pop-flip-serve" function claimed in the utility patent cannot be produced by the design claimed in the design patent since neither the cooking vessel nor the volume of the cooking vessel are claimed or disclosed in the design patent. If the volume of the cooking pan is not described by the illustrations of the design patent, Ropat argues, then one does not know from the design patent whether the volume of the dome is greater than the cooking vessel. We disagree.

A design patent is granted pursuant to 35 U.S.C. § 171 on an *article of manufacture* as well as for a distinctive design. Being a corn popper, the article of manufacture present in the design patent here must necessarily possess a cooking vessel and heating element in its base. Compare *Application of Thorington, supra*, 418 F.2d at 533. Regardless of the exact volume of the cooking pan in the popper claimed in the design patent, it readily appears from the design patent that its volume necessarily would be less than that of the dome.

Ropat next contends that a person following its design patent would not necessarily come within its utility patent. We again disagree. A popper of such design would clearly infringe Ropat's utility patent since it would be capable of functioning in the precise manner as claimed in the utility patent.

Finally, Ropat raises various assorted points which it maintains are "inconsistent with the finding" of the district court. Ropat's first point is that the Patent Office's failure to cite the design patent as a reference against the utility patent is evi-

dence of its belief that double patenting did not exist. The district court was of the opinion that this along with Ropat's failure to provide evidence from the file wrapper history of the utility patent necessarily weakened the presumption of validity which the utility patent ordinarily would enjoy. We concur with the district court's statement. Where, as here, the first patent is not cited as a reference in the second patent, any presumption of validity of the second patent is greatly undermined.

Ropat next contends that its assertion that its utility patent has been infringed by the various defendants but that its design patent has not been infringed is relevant to the question of double patenting. We disagree; Ropat cannot rely on its choice of trial strategy in such a manner. Lastly, Ropat argues that the fact that four of the six defendants in its original infringement action have neither raised nor joined the appellees in raising the defense of double patenting indicates that the utility patent is not invalid. We do not believe, however, that such a fact is in any way relevant in determining whether double patenting has occurred in the instant case.

Since the novel design feature claimed in the first-to-issue design patent produces the novel function claimed in the later-issued utility patent, utility patent No. 3,611,910 is invalid due to double patenting over the design patent No. 206,674. The judgment of the district court is accordingly affirmed.

AFFIRMED.