**FEARING MANUFACTURING CO., Plaintiff,**

v.

**HOPKINS AGRICULTURAL CHEMICAL CO., Defendant,**

and

**Y–Tex Corporation, Intervenor.**

No. 75–C–238.

United States District Court, W. D. Wisconsin.

March 5, 1980.

Michael, Best & Friedrich, Madison, Wis., for plaintiff; Jacobson & Johnson, St. Paul, Minn., of counsel.

Theodore J. Long, Madison, Wis., for defendant; Clyde F. William and David A. Anderson, Chicago, Ill., of counsel.

## OPINION AND ORDER

CRABB, District Judge.

This suit concerns the alleged infringement of a design patent and a utility patent which were issued for the same device, an animal identification ear tag. Plaintiff, the owner by assignment of the two patents, charges Hopkins Agricultural Chemical Company, the seller of the suspect ear tags, with infringement of the design patent, United States Patent No. 229,571. Y–Tex Corporation, the manufacturer of the suspect tags, intervenes in this action and defends against charges that it has infringed both the design patent and a subsequently issued utility patent, United States Patent No. 3,934,368. Both defendants counterclaim, alleging patent invalidity and demanding declaratory, injunctive and other relief. Jurisdiction is predicated upon 28 U.S.C. § 1338(a).

This suit is now before the court on two motions: (1) plaintiff's motion to substitute United States Reissue Patent No. 29,536 for the original utility patent; and (2) defendant Y–Tex's motion for partial summary judgment on the claim involving the utility reissue patent, on the ground that the patent is invalid for double patenting over the design patent.

■ Plaintiff's motion to substitute Reissue Patent No. 29,536 for the original Patent No. 3,934,368 is unopposed by Y–Tex, against whom the patent is asserted. Y–Tex will not be prejudiced by the substitution; 35 U.S.C. § 252 provides that a person may continue to engage in activities commenced prior to the grant of the reissue unless those activities constitute a violation of a valid claim in the reissue patent which also appeared in the original. For these reasons, plaintiff's motion to substitute the reissue patent for the original is granted.

With respect to the utility patent claim against Y–Tex, there is no genuine issue as to any of the material facts set out hereafter under the heading, "Facts."

## FACTS

Donald David Fearing, inventor of the tag which is the subject matter of the patents, first sought a United States patent for the tag on September 23, 1971, when he filed an application for a design patent. That application was granted on December 11, 1973, and the design patent was issued for a term of 14 years.

On May 22, 1974, Fearing filed an application for a utility patent that was a continuation-in-part of an earlier, abandoned application. The utility patent was issued on January 27, 1976, for a term of 17 years. The earlier issued design patent is not cited as a reference in the utility patent, and there is no evidence that the design patent was ever formally considered in connection with the applications for the utility patent or the reissue of the utility patent. Neither was it completely overlooked, however. The patent examiner knew of the existence of the design patent, as is evident from a September 23, 1975, telephone conversation

between the examiner and plaintiff's lawyer, during which the examiner referred to the design patent.

On February 14, 1978, the utility patent was reissued to conform to an application containing amended claims.

Plaintiff is the owner by assignment of both the design and utility patents. Plaintiff commenced this action on June 4, 1975, prior to the issuance of the utility patent, charging infringement of the design patent. In March of 1976, plaintiff commenced a lawsuit against Y–Tex in the District of Wyoming charging infringement of both the design and utility patents. As a result, Y–Tex was granted leave to intervene in this action as a defendant on May 26, 1976.

The device which is the subject matter of the patents is an animal identification ear tag which has been produced by plaintiff under the name of Fearing Tuff-Flex. The following drawing of the tag is reproduced from the Fearing design patent, and is substantially similar to drawings included in the reissue of the utility patent:

Simply stated, the Fearing tag consists of three segments: (1) a flat, broad body portion constructed of a resilient, rubberlike material; (2) a short narrow neck which extends at a right angle backward from the top of the body portion; and (3) a long, narrow anchoring head which extends upwardly and downwardly from the neck and which is connected at its midpoint to the neck. The neck of the device is resiliently hinged to the body portion and to the anchoring head in such a manner that it is bendable at the lines of intersection. As a consequence, the anchoring head can be collapsed against the neck and body so that all three portions of the tag are in a parallel relation to one another.

## OPINION

Any invention protected by plaintiff's design patent must inhere in the appearance of the neck and anchoring head portion of the tag, since there is no originality in the appearance of the remainder of the tag.[1] For the same reason, any invention protected by the utility patent must likewise inhere in the neck and anchoring head. Indeed, the utility patent application focuses almost exclusively on this portion of the tag.[2] The invention claimed by the utility patent application is an ear tag so constructed that the long, narrow anchoring head may be folded flush against the neck of the tag and inserted through a slit in the animal's ear; the anchoring head need not be flexed or rolled prior to insertion as the heads of other tags must be. After insertion, the anchoring head extends upwardly and downwardly from the slit, rather than laterally as do the anchoring heads of other tags.

1. The body of the Fearing tag is flat and has a pentagonal shape. The E. B. Ritchey ear tag employs the identical body shape and is protected by U. S. Patent No. 3,552,051 issued January 5, 1971. Thus any design difference between the prior art and the tag pictured in the Fearing design patent must reside in the neck and anchoring head.

2. For example, the following summary of the Fearing invention is included in the reissue utility patent under the caption "Abstract":

An ear tag for identifying animals is provided with a flat body portion including the identifying indicia. The body is connected by a neck portion, which is usually in right angular relation to the body portion, to an anchoring head. This anchoring head extends upwardly and downwardly therefrom. The anchoring head will not readily pull out due to relatively rigid construction thereof. The neck of the tag, rather than the anchoring head, flexes during insertion into the ear.

Plaintiff argues that patents are matters of a highly specialized and technical nature and that for this reason patent actions should rarely be disposed of on motions for summary judgment. However, the Court of Appeals for the Seventh Circuit has clearly indicated that the use of summary judgment is appropriate in patent cases where there exists no genuine issue of material fact, and where

"the structure and mode of operation of the accused device may be readily comprehended by the court and compared with the invention described and claimed in the patent without need of technical explanation by expert witnesses." *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 356 F.2d 442, 447 (7th Cir. 1966), *cert. denied* 384 U.S. 950, 86 S.Ct. 1570, 16 L.Ed.2d 547 (1966).

*Research Corporation v. Nasco Industries, Inc.*, 501 F.2d 358, 362 (7th Cir. 1974), *cert. denied* 419 U.S. 1096, 95 S.Ct. 689, 42 L.Ed.2d 688 (1974). Both conditions are met here: there is no issue of material fact; the nature and operation of the anchoring head are simple enough that explanations by technical experts are unnecessary.

Having found that there is no genuine issue as to any fact material to the utility patent claim, and that a motion for summary judgment is proper in a case such as this, I now consider whether Y–Tex is entitled to judgment as a matter of law.

It is provided in 35 U.S.C. § 282 that patents are presumptively valid. This presumption imposes on the party attacking the patent the burden of making a clear and convincing showing of invalidity. *Chicago Rawhide Mfg. Co. v. Crane Packing Co.*, 523 F.2d 452 (7th Cir. 1975), *cert. denied* 423 U.S. 1091, 96 S.Ct. 887, 47 L.Ed.2d 103 (1976). The Seventh Circuit has ruled that where a charge of double patenting has been made and the first patent is not cited as a reference in the second patent, "any presumption of validity of the second patent is greatly undermined." *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (7th Cir. 1976). Here, the design patent was not cited as a reference in the later

issued utility patent. Nevertheless, the patent examiner knew of the design patent when he granted the utility patent. Since, on a motion for summary judgment, all inferences must be drawn in favor of the party resisting the motion, *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), I will assume that when the examiner granted the utility patent, the consideration which he gave to the design patent was great enough that the burden of persuasion remains with Y–Tex. Although I recognize that the burden is a heavy one, *TSC Industries, Inc. v. International Harvester Company*, 406 F.2d 53 (7th Cir. 1968), I nevertheless find that Y–Tex has successfully sustained it.

The patent laws allow a design patent and a utility patent to issue on the same device, but each patent must claim a separate, distinct patentable invention. *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (1976). When two patents are issued for the same invention, the power to create a monopoly is considered to have been exhausted by the first patent and the second patent is invalid for double-patenting. *Id.* The critical question, then, is whether plaintiff's design and utility patents protect the same or different inventions. In *Ropat*, the Seventh Circuit adopted the following standard for use in answering such questions: "[D]ouble patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa." *Id.* at 381.

In this case, the novel esthetic effect and the novel function both reside in a single feature: the neck and anchoring head portion of the tag. It is the angle and shape of the neck and anchoring head which give the tag its novel appearance. Plaintiff argues that it is this, together with the capacity of the neck and anchoring head to be folded flush against each other, that yield the novel function. The novel function consists of the simplified method of insertion and the vertical position of the

anchoring head following insertion. Plaintiff's argument that the flexibility of the neck and anchoring head are not disclosed in the design patent is accurate but not determinative. There need not be perfect correspondence between the features claimed by the two patents in order for both to claim the same invention. *Ropat v. McGraw-Edison Co.*, 535 F.2d 378 (1976). Plaintiff also argues that because the claims of the reissued utility patent have omitted some of the details shown in the design patent, a tag constructed according to the claims of the utility patent would not necessarily embody the design patent.[3] This argument fails for the same reason. *Ropat* teaches that the existence of double-patenting does not turn on minor differences in appearance. *Id.* at 382. Notwithstanding the differences between the claims of the two patents in this case, the novel design and the novel function are interdependent to such an extent that I must conclude that there is but a single invention. This conclusion is buttressed by the fact that had the inventor of the Fearing tag only assigned the utility patent to plaintiff, plaintiff could not have produced the tag defined by that patent without infringing the unassigned design patent. The novel function of the Fearing tag naturally produces the novel design so that, in the words of *Ropat*, "a structure embodying the mechanical invention would of necessity embody the design . . . ." *Id.* at 381.

The court in *Ropat* was dealing with a situation in which the reverse proposition was also true: that is, a structure which embodied the design patent necessarily embodied the mechanical patent as well. *Id.* at 381. Here, one can conceive of a device identical in appearance to the Fearing tag but which functions differently because it lacks the capacity to fold. In this respect, the facts of this case differ from those with which the Seventh Circuit was faced when it decided *Ropat*. I have been unable to find a decision by that court in a case such as this, in which "a structure embodying

the mechanical invention would of necessity embody the design" but in which the reverse proposition is not true. Nevertheless, the logic of *Ropat* and the authorities cited in *Ropat* suggest that a finding of double-patenting is required here. The design and function of the tag are so related that they are "manifestly the result of the same inventive idea." *In re Hargraves*, 53 F.2d 900, 901, 19 C.C.Pa. 784 (1931). It cannot be that the appearance of the Fearing tag is patentably distinct from the tag's function when the appearance is a necessary consequence of that function.

A finding of more than one patentable invention would be inconsistent with those principles which underlie our patent system and which *Ropat* and other cases have sought to protect. "The declared purpose of the patent law is to promote the progress of science and the useful arts by granting to the inventor a limited monopoly, the exercise of which will enable him to secure the financial rewards for his invention." *U. S. v. Univis Lens Co., Inc.*, 316 U.S. 241, 250, 62 S.Ct. 1088, 1093, 86 L.Ed. 1408 (1942). The ultimate purpose in creating a limited monopoly by awarding a patent is not to benefit the inventor financially, but is to induce the inventor to disclose his or her invention so that the public may freely benefit from it. *Sinclair & Carroll Co., Inc. v. Interchemical Corp.*, 325 U.S. 327, 65 S.Ct. 1143, 89 L.Ed. 1644 (1945). This purpose does not require the issuance of two patents for the Fearing tag. Any device which infringes the claims of the utility patent will also infringe the claims of the design patent, and therefore, the utility patent adds nothing to the scope of protection afforded plaintiff by the design patent. By itself, the design patent completely protects plaintiff's interest in the financial rewards of the Fearing invention. The sole function of the second-to-issue utility patent is to extend temporally plaintiff's monopoly. In this respect, the utility patent contravenes both the patenting system's purpose of

---

**3.** For example, claim 3 eliminates the specification regarding the thickness of the anchoring head; claim 4 eliminates the specification that the anchoring head have a concave/convex shape.

bringing new inventions into the public domain, and the statutory provision that permits an inventor only a limited monopoly over his or her invention. 35 U.S.C. §§ 154, 173. In a similar case, the Seventh Circuit invalidated the second-issued patent after concluding that the patent was not required to protect the invention and only served to enlarge the time of the inventor's monopoly. *Weatherhead Company v. Drillmaster Supply Company*, 227 F.2d 98 (7th Cir. 1955).

In sum, the Fearing tag embodies a single invention, and is only entitled to a single patent granting a time-limited monopoly. That monopoly is exhausted by the first-to-issue design patent, *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (1976), and plaintiff's utility reissue patent is therefore invalid. Since the utility patent is invalid, plaintiff's claim that Y–Tex has infringed that patent must fail.

For the reasons stated above, plaintiff's motion to substitute United States Reissue Patent No. 29,536 for the originally issued United States Patent No. 3,934,368 is GRANTED, and defendant Y–Tex's motion for partial summary judgment that the reissue patent is invalid is also GRANTED.