**ADIDAS FABRIQUE DE CHAUSSURES DE SPORT, Plaintiff,**

**v.**

**ANDMORE SPORTSWEAR CORP. and The Finals Racing Swimsuits, Ltd., Defendants and Counterclaim Plaintiffs,**

**v.**

**ADIDAS FABRIQUE DE CHAUSSURES DE SPORT and Arena U.S.A., Inc., Counterclaim Defendants.**

**No. 82 Civ. 3325.**

United States District Court, S.D. New York.

Jan. 11, 1984.

David W. Brinkman, Edward M. Prince, William K. West, Jr., Cushman, Darby & Cushman, Washington, D.C., Ronald M. Senio, Ide & Haigney, New York City, for plaintiff.

Allen I. Rubenstein, Jane Shay Wald, Gottlieb, Rackman & Reisman, New York City, for defendant.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff Adidas Fabrique De Chaussures De Sport ("Adidas") brought this action against defendants Andmore Sportswear Corp. ("Andmore") and The Finals Racing Swimsuits, Ltd. ("Finals"), alleging that four of Adidas' patents for women's swim- suits have been infringed by the defend- ants. Defendants have moved for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P., on the ground that two of plaintiff's patents are invalid by virtue of "double patenting."

### Background

Plaintiff is the assignee of three design patents and one utility patent that are at issue in this case.[1] A fourth design patent assigned to plaintiff is also relevant to the present motion.

Design patent No. 259,671 ("D'671") and design patent No. 259,672 ("D'672") were issued to plaintiff on June 30, 1981, each claiming an "ornamental design" for a one- piece woman's swimsuit.[2] Figures disclos- ing the patents' claims are reproduced be-

---

1. Utility patents are issued pursuant to 35 U.S.C. § 101, which provides that a patent may be obtained for "any new and useful process, ma- chine, manufacture, or composition of matter, or any new and useful improvement there- of...." Design patents are issued pursuant to

35 U.S.C. § 171, which provides that a patent may be obtained for "any new, original and ornamental design for an article of manufac- ture...."

2. Plaintiff does not allege that defendants in- fringed the D'672 patent.

low.[3] While the two designs are similar, the design covered by the D'672 patent features a larger cut-out section in the back. Both of those design patents have 14 year terms and will expire on June 30, 1995.

Utility patent No. 4,306,317 (" '317"), issued to plaintiff on December 22, 1981, includes five drawings and two columns of descriptive text. The drawings, reproduced below, are identical to those shown

3. D'671:

D'672:

in the D'671 and D'672 patents.[4] The text of the '317 patent states that a frequent problem with one-piece swimsuits with open back sections is that "the lower por-

4. '317:

tion of the suit has a tendency, in use, to separate slightly from the body of the swimmer which can decrease performance." The solution offered by the '317 patent is a continuous elastic edging that causes the suit to cling to the swimmer's body.[5] The '317 patent was issued for a term of 17 years with an expiration date of December 22, 1998.

Design patent No. 261,822 ("D'822"), issued to plaintiff on November 17, 1981, covers an "ornamental design" for a one-piece woman's swimsuit which is shown in six figures, three of which are reproduced

below.[6] Among the prominent features of the design are a horizontal strip across the top of the front of the suit and in the back an oval opening in the back. The D'822 patent's 14-year term will expire on November 17, 1995.

Design patent No. 264,516 ("D'516"), issued to plaintiff on May 25, 1982, covers an "ornamental design" very similar to the D'822 patent. While the back of the suit in the D'516 patent also features an oval opening, the front does not have a horizontal stripe across the top; rather, the design includes two vertical stripes, one along

**5.** The text of the '317 patent summarizes the characteristics of the swimsuit (emphasis added):

> The swimsuit according to the invention is of the type described above in which the back of the suit is bordered at its upper portion by a transverse edging, connecting essentially at the level of the armpits with the lateral edgings of the breast panel of the suit, and essentially at the center of which the two back straps connecting the back of the suit to the breast panel converge without crossing, the

> suit being essentially characterized by the fact that it includes a continuous elastic edging made in a single piece forming a closed loop around the openings for passage of the legs in the lower portion of the suit, slanting upwardly along the lateral sides of the suit, and then forming the peripheral edging of the upper portion of the suit and joined to the transverse edging of the upper portion of the back essentially in the region where the two back straps converge.

**6.** D'822:

Fig.2 Fig.1 Fig.4

each side of the suit.[7] The D'516 patent was issued for a 14-year term with a May 25, 1996 expiration date.

While the present motion was pending, plaintiff filed terminal disclaimers with regard to the two patents disputed by defendants, the '317 patent and the '516 design patent. The first terminal disclaimer shortens the term of the '317 patent so that it will expire on June 30, 1995, the expiration date of both the D'671 and the D'672 patents. The second terminal disclaimer shortens the term of the D'516 patent so that it will expire on November 17, 1995, the expiration date of the D'822 patent.

### Discussion

■ Plaintiffs contend that summary judgment is generally inappropriate in patent cases, given the usual complex nature of such cases. *See Moore Business Forms, Inc. v. Minnesota Mining & Manufacturing Co.*, 521 F.2d 1178, 1185 (2d Cir.1975). As in all summary judgment proceedings, the party seeking judgment in a patent action bears the burden of demonstrating that there are no genuine issues of material fact. *Id.* Even in the absence of

7. D'516:

disputed issues of fact, the party attacking a patent faces the further burden of overcoming the statutory presumption that a duly-issued patent is valid. 35 U.S.C. § 282. The moving party must establish the patent's invalidity by clear and convincing evidence, with all reasonable inferences drawn in favor of the party resisting the motion. *Fearing Manufacturing Co. v. Hopkins Agricultural Chemical Co.*, 485 F.Supp. 985, 988 (W.D.Wis.1980).

### 1. *Utility vs. Design Patents*

■ Defendants argue that the '317 utility patent is invalid on the ground that the patent covers the same invention as the D'671 and D'672 design patents, thereby constituting "double patenting." While the patent laws allow a design patent and a utility patent to issue on the same device, each patent must claim a separate, distinct patentable invention. *See In re Hargraves*, 53 F.2d 900, 901 (C.C.P.A.1931). Evaluating claims of double patenting in the context of design and utility patents poses special difficulty, since it is "not easy to compare utility word claims with design picture claims in determining if the 'same

*Fig. 1* *Fig. 2* *Fig. 3*

invention' is being claimed." *Application of Swett*, 451 F.2d 631, 635, 59 CCPA 726 (1971). The use of designs in a utility patent is merely illustrative, for the utility patent's scope is defined by the words of the claims. Thus, the mere fact that the utility patent at issue illustrates its claims with the designs covered by patents D'671 and D'672 is not dispositive. *See Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378, 381 (7th Cir.1976).

Courts have developed several tests for deciding whether two patents claim the same invention. Defendants, drawing on the analysis in *Application of Thorington*, 418 F.2d 528, 57 CCPA 759 (1969), favor the "general rule that double patenting exists if the design claimed in the first-to-issue design patent cannot be employed without infringing the utility patent." *See Ropat Corp., supra*, 535 F.2d at 381 n. 5. Defendants urge that *Thorington* represents the definitive "C.C.P.A. test."[8] However, the Court of Customs and Patent Appeals, in decisions subsequent to *Thorington*, has set forth a more stringent standard for finding double patenting. "[T]he test is whether one of the claims being compared could be literally infringed without literally infringing the other. If it could be, the claims do not define identically the same invention." *Application of Avery*, 518 F.2d 1228, 1232 (C.C.P.A.1975); *Application of Vogel*, 422 F.2d 438, 57 CCPA 920 (1970).

Under the *Avery-Vogel* test, double patenting in the design-utility context is established when the patents "cross-read." "To say that patents cross-read means that a device embodying the patentable design of the design patent *must* infringe the utility patent; *and* that a device embodying the patentable claims of the utility patent *must* infringe the design patent." *Wahl v. Rex-*

nord, Inc., 624 F.2d 1169, 1179 (3d Cir. 1980) (emphasis in original). Plaintiffs urge that the court adopt the "cross-reading" test. However, the court need not at this time decide whether the more stringent "cross-reading" test is applicable. It is enough for the purpose of the present motion to consider whether the design patents can be employed without infringing the utility patent.

■■■ It is true, as plaintiffs point out, that the D'671 and D'672 design patents claim only "ornamental design[s]" for swimsuits and do not specify any material, while the utility patent specifically claims a continuous edging made of elastic material. Plaintiffs argue that, in the absence of a specified material, the design patents may be employed without infringing the utility patent. However, "a patent can cover certain items not specifically claimed in the patent but necessarily implied by it." *Wahl v. Rexnord, supra*, at 1180. This is true for a design patent, as well as for a utility patent, since a design patent under section 171 protects "an article of manufacture" and not merely the design. *See Ropat Corp., supra*, at 382. In the present case, the article of manufacture recited in the design patent is a bathing suit. If a bathing suit embodying the design necessarily would have the continuous elastic edging claimed by the later-issued utility patent, the utility patent would be invalid by reason of double patenting.[9]

■■■ Defendants urge that the relationship between the patents at issue in the present case is indistinguishable from that in *Thorington*, in which a design patent for a fluorescent lamp was found to imply certain mechanical features claimed in a utility patent. The *Thorington* court held that "the evidence of record clearly establishes

---

8. Defendants place special emphasis on decisions of the Court of Customs and Patent Appeals since any appeal of this case will be heard by the newly-created Federal Circuit, which has stated that it will follow as precedent decisions of the C.C.P.A. and the Court of Claims. *See South Corp. v. United States*, 690 F.2d 1368, 1369 (Fed.Cir.1982).

9. A finding of double patenting does not require that each patent claim every feature of the other. *Ropat, supra*, at 382. In the present case, however, the continuous elastic edging is the allegedly novel characteristic of the utility patent's invention and thus must be implied by the design patent to establish double patenting.

that the term 'fluorescent lamp' has a well-defined meaning which necessarily includes those elements recited in the claims on appeal." 418 F.2d at 537. Contrary to defendants' contentions, however, the record of the present case does not afford a sufficient basis to find that the term "bathing suit" has a well-defined meaning which necessarily includes the continuous edging of elastic material that is claimed in the utility patent. Arguably, the suit illustrated in the design patents could be made to cling to the body at the legs and neck openings by means other than the continuous elastic band described in the design patent. Summary judgment is therefore inappropriate with regard to this issue.[10]

### 2. Design v. Design

Defendants' argument against the validity of the D'516 patent rests, in large part, on a different basis than their argument against the '317 patent. While defendants urge a "same invention-type" double patenting rejection of the '317 patent, they primarily contend that the similarities between the D'516 and D'822 patents warrant a rejection of the later-issued D'516 patent under the less restrictive "obviousness" test. See Thorington, supra, at 534. Defendants assert that the differences between the two designs are "merely obvious expedients" that do not make one design "patentably distinct" from the other. See Application of Russell, 239 F.2d 387, 389, 44 CCPA 716 (1956).

 Both design patents at issue here disclose "[a]n ornamental design for a bathing suit." The patents' claims are directly related to the "specific illustration shown in the drawings." See Application of Geiger, 425 F.2d 1276, 1280, 57 CCPA 1073 (1970). Structurally the one-piece swimsuits are almost identical, each having straps that converge from the front of the suit to the top of the back, below which there is an oval cut-out section. The D'822 patent includes two apparent hemlines that are not disclosed by the D'516 patent: one

in the back below the cut-out section, the other along the side of the suit. The design claimed in the D'822 patent also features a stripe along the top of the front of the swimsuit, while the D'516 patent shows stripes along the front of the sides of the suit.

A comparison of the patents' claims lends support to defendants' objection that the "slight variations" between designs "would be obvious to an ordinary artisan or designer." Plaintiffs, however, contend that the "obviousness" objection was overcome by the plaintiffs' filing a terminal disclaimer, which assured that the term of the second-to-issue patent (D'516) would not extend beyond that of the first-to-issue patent (D'822). See Sarkisian v. Winn-Proof Corp., 697 F.2d 1313, 1326 (9th Cir. 1983).

It is not disputed that the major reason for the "obviousness-type" double patenting doctrine is to prevent the extension of the original patent's monopoly beyond the time period allowed by law. See Thorington, supra. Defendants, however, assert that the terminal disclaimer does not correct the "other evils inherent in double patenting," including the harassment of competitors by multiple lawsuits based on multiple patents. See Sterling Varnish Co. v. The Louis Allis Co., 149 F.Supp. 826, 829 (E.D.Wis.1957). The continued vitality of the principle underlying Sterling is questionable. Since Sterling, courts, absent gross misconduct by the patent owner, have consistently found that a terminal disclaimer overcomes an "obviousness-type" rejection. See Sarkisian, supra; Thorington, supra. But see Chisholm-Ryder Co. v. Lewis Mfg. Co., 398 F.Supp. 1287, 1302 (W.D.Pa.1975). This court finds no reason in this record to disregard plaintiff's terminal disclaimer or to hold it insufficient to overcome an "obviousness-type" double patenting objection.

 Nor do the present facts warrant a "same invention-type" double pat-

---

**10.** Because defendants have not established their double-patenting claim, the court need not

consider the effect of plaintiff's terminal disclaimer with respect to the '317 patent.

enting rejection. It is settled law that one patent may claim "a mere obvious variation of what is claimed" in another without claiming the same invention. *See Geiger, supra.* In the present case, the differences between the designs, however obvious they may be, preclude a finding that the D'822 and D'516 patents claim the same invention.

*Conclusion*

For the foregoing reasons, defendants' motion for summary judgment is denied in all respects.

So Ordered.