**Eugene A. WAHL and Vibra Screw, Incorporated, Appellants,**

v.

**REXNORD, INC.**

**No. 79–2054.**

United States Court of Appeals, Third Circuit.

Argued Feb. 15, 1980.

Decided June 16, 1980.

---

ing in the unusual circumstance where the two patents are of different types; the first is a design patent covering the "ornamental design for an article of manufacture," while the second is a utility patent covering the mechanical claims of an article of manufacture. Because we conclude that there are remaining issues of material fact on whether the design and utility patent in this case embody the same inventive concept, we will reverse the district court's grant of summary judgment.

John W. Logan, Jr. (argued), Thomas M. Ferrill, Jr., Robert P. Seitter, Ferrill & Logan, Fort Washington, Pa., Harold Friedman, Kirsten, Friedman & Cherin, Newark, N. J., for appellants.

Thomas F. McWilliams (argued), McWilliams, Mann & Zummer, Chicago, Ill., for appellee.

Before ALDISERT, WEIS and HIGGINBOTHAM, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

It is a generally recognized precept in patent law that an inventor can obtain no more than one patent for any original discovery. Many decisions of this and other circuits have analyzed the circumstances in which a patented discovery can be said to copy an earlier patented discovery, and therefore is invalid as a double patent. This case, one of first impression in this court, requires us to analyze double patent-

## I.

The appellants, Vibra Screw, Inc. (Vibra Screw) and Eugene Wahl, have sued the appellee, Rexnord, Inc. (Rexnord), for patent infringement of a utility patent. This appeal concerns the holding by the district court for Rexnord on the ground that the utility patent Rexnord allegedly infringed was invalid because it was a double patent of an earlier issued design patent.

On August 24, 1965 a design patent was issued to Eugene Wahl under United States Patent No. 202,068 ('068 patent). A design patent covers a "new original and ornamental design for an article of manufacture."[1] Wahl's invention concerned the external design of a "storage bin flow promoter," a device used at the base of a storage bin to expedite the flow of material out the bottom of the bin. On July 19, 1966, one year later, Wahl secured a utility patent, United States Patent No. 261,508 ('508 patent). A utility patent covers a "new and useful process, machine, manufacture or composition of matter, or any new and useful improvement thereof."[2] Wahl's patent covered the internal structure of a "vibratory bin activator," the same type of device that was the subject of his design patent. Generally

---

1. 35 U.S.C. § 171:

 Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title. The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

2. 35 U.S.C. § 101:

 Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

speaking while the '068 patent covered an external ornamental design of the device, the '508 utility patent covered an internal mechanical structure.

The exclusive United States licensee for both patents was Vibra Screw, of which Wahl served as president. Under an agreement between Wahl and Vibra Screw, Wahl received 2½% of net sales price of all patented devices sold by Vibra Screw.

On April 30, 1976 Wahl and Vibra Screw filed suit against Rexnord for patent infringement of the '508 utility patent. They claimed, *inter alia*, that Rexnord was using and selling vibratory bin activators embodying the inventions described and claimed in

the utility patent. Rexnord moved for summary judgment on July 8, 1978 on the ground that the '508 utility patent was invalid as a double patent of Wahl's earlier issued '068 design patent.[3] Wahl and Vibra Screw, in turn, moved for summary judgment on the ground that the '508 utility patent was not invalid.

The parties submitted three types of evidence in support of their motions.

The first, and most important, were the patents themselves. The '068 design patent claimed "the ornamental design for a storage bin flow promoter as shown and described" in the three patent diagrams included below.[4]

3. In the alternative, Rexnord moved for summary judgment on the ground that it had not infringed the utility patent.

4. The storage bin flow promoter is described in the patent as follows: Figure 1 is a front, elevational view of a storage bin flow promoter. Figure 2 is a side, elevational view. Figure 3 is a top plan view. The dominant features of the design reside in the portions, shown in full lines. The bottom of the cylindrical projection on the bottom of the promoter has a conventional cylindrical opening.

Des. 202,068

# United States Patent Office

Patented Aug. 24, 1965

202,068
### STORAGE BIN FLOW PROMOTER
Eugene A. Wahl, 294 Forest Ave., Glen Ridge, N.J.
Filed Nov. 27, 1963, Ser. No. 77,588
Term of patent 14 years
(CL D55—1)

The distinctive features of the '068 design are the plurality of increasingly narrow convex surfaces that are outlined by the full lines in the diagram. It is important to note that the patent diagram can only claim the aesthetic appearance of these dominant lines. The internal broken lines explain the environment in which the patent exists, but are technically not part of its claims. *See Transmatic, Inc. v. Gulton Industries, Inc.,* 601 F.2d 904, 912 (6th Cir. 1979); *Application of Blum,* 374 F.2d 904, 907 & n. 1 (C.C.P.A.1967).[5] Thus, the outline suggesting an interior of concave surfaces and the mechanical gyrator attached to the baffle

5. Indeed, the patent itself states, "The dominant features of my new design reside in the portions, shown in full lines." '068 patent, *reprinted in* App., at 481a.

in figure two are not specifically claimed by the design patent.

The '508 utility patent claimed a vibratory bin activator which was portrayed in patent diagrams similar to the interior suggested by the '068 patent. These diagrams are as follows: [6]

JULY 19, 1966 E. A. WAHL 3,261,508

VIBRATORY BIN ACTIVATOR

Filed Jan. 24, 1964 3 Sheets—Sheet 1

6. The '508 utility patent, *reprinted in* App., at 477a, *describes the diagrams as follows:*

FIGURE 1 is a top plan view of apparatus made in accordance with this invention, with a portion of the baffle member broken away;

FIGURE 2 is a side, elevational view thereof, with a portion of the side walls of the concave members broken away;

FIGURE 3 is a side elevational view showing the apparatus attached to a storage bin, and drawn to a reduced scale; and

FIGURE 4 is an enlarged, fragmentary, view showing the apparatus attached to the storage bin, with certain parts in cross-section.

July 19, 1966 E. A. WAHL 3,261,508

VIBRATORY BIN ACTIVATOR

Filed Jan. 24, 1964 3 Sheets—Sheet 2

Fig-3,

The diagrams accompanying the utility patent provide an *illustration* of the mechanical claims of the mechanical invention and do not constitute the patent claim itself. *Anchor Hocking Corp. v. Eyelet Specialty Co.*, 377 F.Supp. 98, 101 (D.Del.1974). The actual patent is embodied in the word claims included with the diagram. A representative claim in the '508 utility patent states it is an

[a]pparatus for promoting the flow of material from a storage hopper having a discharge opening formed in the bottom thereof, said apparatus comprising,

(a) a material-receiving member having a bottom wall defined by a plu-

rality of concave surfaces terminating in a central outlet opening,

 (b) means vibrationally suspending the material receiving member from the hopper and in spaced position to the hopper wall, and

 (c) means for vibrating the material-receiving member.

The second type of evidence the parties submitted was depositions and affidavits by Wahl and other experts on the unique inventive contribution of each patent. Finally, the appellants submitted drawings of hypothetical devices with non-conforming interiors and exteriors which would supposedly infringe one patent and not the other.

On January 25, 1979 the district court granted summary judgment for Rexnord on the ground that the utility patent was invalid because it was a double patent of the design patent. *Wahl v. Rexnord, Inc.*, 481 F.Supp. 573 (1979) (*Wahl I*).[7] To find double patenting, it reasoned, "the features in which the novel aesthetic effect resides [must be] the identical features which produce the novel function claimed in the utility patent." *Id.* at 583. In this case, the novel feature of the design patent was its

 outside proportions and the exterior configuration thereof, which produce a plurality of convex exterior surfaces for the bottom walls of the storage bin promoter. This novel design feature clearly produces the novel interior configuration which forms surfaces of the dish-shaped sides, resulting in a positive discharge of material through the outlet when the gyrator is operating, while at the same time preventing discharge of material when

the gyrator is not operating. Such construction facilitates the movement of material down from the upper regions of the storage bin and alleviates the congestion and packing of material at the bin discharge opening, thereby assuring a positive and uniform flow.

*Id.* at 583. The court conceded that there were elements of the utility patent not necessarily found or even "necessarily implied" by the design patent, but concluded "[d]ouble patenting in the design-utility situation cannot turn on the niceties of precise ornamentation," but rather "on the presence or absence of design features which produce the novel function claimed in the utility patent." *Id.*[8]

The appellants subsequently moved for reconsideration of the court's decision on the basis of newly submitted evidence of over 50 instances of commercial sales of bin flow promoters with non-conforming interiors and exteriors. On May 25, 1979 the district court denied the motion on the ground that this evidence did not undermine its conclusion that the two patents were "the same." *Wahl v. Rexnord*, 481 F.Supp. 573, 597 (D.N.J.1979) (*Wahl II*).

Wahl and Vibra Screw have appealed from the district court's decision on two grounds. First, while they agree that the district court adopted the appropriate standard for determining double patenting in a design utility context, they argue it interpreted that standard too "liberally." They contend, in effect, that there must be a one-to-one correspondence between all of the features claimed or necessarily implied by each patent in order to establish double

---

7. The district court denied Rexnord's motion for summary judgment that it had not infringed the '508 utility patent. *Wahl I, Id.* at 586–87. That decision has not been challenged on appeal.

8. The district court also dismissed a separate claim and counterclaim of the parties that are not involved in this appeal. Wahl and Vibra Screw's claim against Rexnord was for infringing another utility patent, No. 3,173,583. In an earlier opinion of May 19, 1977, the district court granted summary judgment for Rexnord on this claim on the ground that the patent had previously been held to be invalid by the Sev-

enth Circuit; the district court's decision was upheld by this court, without opinion, in *Wahl v. Rexnord*, No. 77–1968 (3d Cir. April 12, 1978). Rexnord's counterclaim against Wahl and Vibra Screw was for allegedly harassing Rexnord and its customers by filing meritless patent infringement claims in Idaho in violation of Sections One and Two of the Sherman Act, 15 U.S.C. §§ 1 and 2. In *Wahl I* the district court granted summary judgment to the plaintiff on the Section One violation. The court dismissed the claim of a Section Two violation on December 20, 1979.

patenting. Second, even if the district court interpreted the standard properly, they claim that the facts of this case do not warrant summary judgment. They suggest that the presence of not insignificant commercial sales of devices with nonconforming interiors and exteriors creates a material issue of fact under any interpretation. We will first review the standard the courts have applied in this context and then analyze the district court's interpretation. Finally, we will consider the legal significance of the sale of bin activators with non-conforming interiors and exteriors under this interpretation.

## II.

■■■ It has long been recognized that an inventor may not secure a second patent on a discovery in which he already has secured a prior patent. This principle derives from the temporal limitation placed on the monopoly granted for a patent. Design and utility patents provide their inventors with a statutory monopoly over their claims for fourteen or seventeen years, respectively. A second patent on a previously patented discovery would impermissibly extend the inventor's monopoly over the discovery beyond these limitations, and therefore is invalid. Enforcement of this prohibition, however, is complicated by the nuances of discerning when patents embody identical inventive ideas.

Most of the prior decisions in this area have considered double patenting of two utility patents and, less frequently, two design patents. In these cases comparison of the patentable contributions of the two inventions is facilitated by the fact that they both consider the same type of subject matter—either the mechanical or the ornamental qualities of a device. The most frequently cited expression of the standard to be applied in this circumstance appears in *Miller v. Eagle Manufacturing Co.*, 151 U.S. 186, 14 S.Ct. 310, 38 L.Ed. 121 (1894). There the Supreme Court stated that "no patent can issue for an invention actually covered by a former patent, especially to the same patentee, although the terms of the claims may differ." It noted that

where the second patent covers matter described in the prior patent, essentially distinct and separable from the invention covered thereby, and claims made thereunder, its validity may be sustained.

In [this] class of cases it must distinctly appear that the invention covered by the later patent was a separate invention, distinctly different and independent from that covered by the first patent; in other words, it must be something substantially different from that comprehended in the first patent. It must consist in something more than a mere distinction of the breadth or scope of the claims of each patent.

*Id.* at 198, 14 S.Ct. at 315.

This court applied this standard for comparing utility inventions in *Pierce v. Allen B. DuMont Laboratories, Inc.*, 297 F.2d 323 (3d Cir. 1961), *cert. denied*, 371 U.S. 814, 83 S.Ct. 24, 9 L.Ed.2d 55 (1962). We observed:

Since *Miller v. Eagle*, courts have repeatedly ruled that an inventor's separate applications embodying the same inventive concept afford proper bases for the issuance of separate patents at different times only if one of them also embodies an additional inventive concept not present in the other. In other words, the difference between the claims of the two applications must itself be inventive.

*Id.* at 327.

Discerning whether double patenting exists between design and utility patents is more complex. By definition the two inventive ideas in these cases are not identical because they cover different subject matter. One concerns mechanical performance, while the other concerns ornamental design. Indeed, some courts originally held that a design and utility patent could never embody the same inventive contribution, and therefore could not double patent. In *Gross v. Norris*, 18 F.2d 418, 420 (D.Md.1927), *modified on other grounds*, 26 F.2d 898 (4th Cir. 1928), the court observed:

But it is difficult to understand how a situation of double patenting can arise in the case of a design and of a mechanical

patent applicable to the same device, notwithstanding certain statements in the books to the contrary. . . . There may be double patenting when two patents for the same mechanical structure are sought, . . . and when two patents for the same design are applied for . . .. But a design patent and a mechanical patent relate to different subject matter. The first pertains to the appearance while the second relates to the mechanical structure of a device, and it is well settled that a design and a mechanical patent covering the same article of manufacture, may coexist.

This position was underscored by the absence of an express statutory prohibition on double patenting of a design and utility patent. *See Application of Thorington*, 418 F.2d 528, 536 (C.C.P.A.1969), *cert. denied*, 397 U.S. 1038, 90 S.Ct. 1356, 25 L.Ed.2d 649 (1970).

 Most recently, however, the Sixth and Seventh Circuits, in *Transmatic, Inc. v. Gulton Industries, Inc.*, 601 F.2d 904 (6th Cir. 1979), and *Ropat Corp. v. McGraw-Edison Co.*, 535 F.2d 378 (7th Cir. 1976), and the Court of Customs and Patent Appeals in *Thorington*, have held that double patenting can occur between a design and utility patent. *See also In re Hargraves*, 53 F.2d 900 (C.C.P.A.1931). These courts recognized, and we concur, that the unique inventive contribution reflected in an ornamental design can be identical to the unique inventive contribution of a mechanical process. The underlying purposes of federal patent law empower courts to invalidate patents in this context. *See Thorington*, 418 F.2d at 536. We also agree with the standard adopted by the Seventh Circuit in *Ropat* and followed by the Sixth Circuit in *Transmatic* for determining double patenting in this context. The court in *Ropat* stated:

> The law of double patenting in the precise situation where a design patent and a utility patent are involved is plagued by a dearth of case law. A review of the cases which do exist reveals various "tests" for determining whether a design patent and a utility patent claim the "same inven-

tion." We believe the best formulation of the applicable standard in this situation is that set forth in such decisions as *In re Hargraves*, 53 F.2d 900 (Cust. & Pat.App.1931), and *Application of DuBois*, 262 F.2d 88, 46 C.C.P.A. 744 (1958). Those cases state that *double patenting exists if the feature in which the novel esthetic effect resides is the identical feature which produces the novel function so that a structure embodying the mechanical invention would of necessity embody the design, and vice versa.*

535 F.2d at 381 (footnote omitted and emphasis added). Like the district court below, we adopt this as the appropriate standard.

### III.

While both parties agree that *Ropat* articulates the proper standard, they disagree sharply on what that standard requires. The source of this disagreement is the district court's holding that the *Ropat* test does not mandate that the two patents "cross-read."

 Cross-reading is a standard for comparing the unique contribution of patents. To say that patents cross-read means that a device embodying the patentable design of the design patent *must* infringe the utility patent; *and* that a device embodying the patentable claims of the utility patent *must* infringe the design patent. The importance of this requirement can be shown by a simple illustration. If patent M includes inventive factors ABC and patent Q includes inventive factors ABC as well as DEF, patent M would infringe Q, but Q would not infringe M; Q would cover inventive contributions not included in patent M, thereby precluding a finding of infringement. The district court held as a matter of law that *Ropat* only requires that the patents read in one direction. Thus, the court only needed to consider whether a device embodying the design of the '068 design patent would necessarily infringe the '508 utility patent.

The appellants challenge this interpretation on the basis of the inclusion in *Ropat* of the clause "vice versa." The appellees, on the other hand, while conceding that cross-reading is required of utility patents, *see, e. g., Application of Stanley*, 214 F.2d 151, 155 (C.C.P.A.1954), contend it is not required when utility *and* design patents are involved. Reading the first to issue design patent on the utility patent is all that is necessary to preclude an extension of monopoly. To require more would protect an extension of that monopoly.

■ We agree with the appellants that to establish double patenting in this context the patents must cross-read. Requiring only that the design patent infringe the utility patent, but not vice versa, could invalidate utility patents that make a unique patentable contribution independent of the contribution they share with the design patent. As we noted in *Pierce*, double patenting cannot occur if "the difference between the claims of the two applications [is] itself inventive." 297 F.2d at 327. A similar approach was adopted by the Sixth Circuit in *Transmatic*, which reversed the district court for failing to cross-read the two patents. Although the design and utility patents in that case shared a unique external design for a subway light fixture, the utility patent included special novel features concerning the location of the lighting source and type of bulb that were not claimed by the external design. 601 F.2d at 912. This requirement of cross-reading assures that a utility patent is not invalidated when it possesses a unique inventive contribution beyond that of the prior design patent. The failure of the district court in this case to cross-read the patents was error.

■ Having held that the two patents must cross-read, however, we note that this does not require, as the district court noted, that every feature of each patent must always be replicated in the other. The appellants have essentially taken the position that there must be a mathematical one-to-one correspondence between the claim of each patent. Many aspects of each patent, however, may be unrelated to its unique patentable contribution. These obvious variations on the basic contribution do not preclude a finding of double patenting when two utility patents are concerned, *see, e. g., Miller v. Eagle Manufacturing Co.*, 151 U.S. at 198 (1894), and there appears to be no reason that they should in themselves prevent a finding of double patenting here. As the court in *Ropat* observed:

> Double patenting in the design-utility situation cannot turn on niceties of precise ornamentation . . ., but rather must turn on the presence or absence of design features which produce the novel function claimed in the utility patent. If narrow, nonfunctional decorative variations which contribute in no way to the novel function were allowed to enter into the inquiry, it would become virtually impossible ever to find double patenting in the design utility situation. . . .
>
> A design patent and a utility patent need not claim every incidental feature of the other in order to claim the "same invention."

535 F.2d at 382. *See also Application of DuBois*, 262 F.2d 88, 90–91 (C.C.P.A.1958). To require that every feature of each patent be replicated in the other would elevate form over substance and sanction the protection of patents with no inventive contribution other than obvious variations on prior patents.

■ We also note, as the district court held, that a patent can cover certain items not specifically claimed in the patent but necessarily implied by it. Section 171 authorizes a patent on the design of an article of manufacture, and not just on its appearance. Thus, a patent on the design of an article of manufacture may necessarily imply the mechanical function associated with that design. See *Ropat*, 535 F.2d at 382; *Thorington*, 418 F.2d at 537; *In re Aslanian*, 200 U.S.P.Q. 500, 503 (S.D.N.Y.1979).[9]

---

9. The decision of the Sixth Circuit in *Transmatic* is not to the contrary. There the court held that the novel characteristics of the interior of light fixtures were not necessarily implied by the external design covered by the design patent. It specifically held that each of the fea-

## IV.

Having outlined the standard for evaluating double patenting in this context, we must consider whether there was a dispute of material fact on this issue. The district court held that the two patents embodied the "same invention." The novel external configuration of the design patent "produce[d] the novel interior configuration which forms the surfaces of the dish-shaped sides." *Wahl I*, 481 F.Supp. at 583. The court's decision was based on the substance of the two patents themselves, and depositions of experts concluding that the patentable contributions of both patents were identical. *Wahl II*, 481 F.Supp. at 600 & n.5.

A motion for summary judgment may only be granted if there are no remaining issues of material fact which, if believed by the trier of fact, would justify a finding for the party opposing that judgment. *Bryson v. Brand Insulation, Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. Applying this standard we believe it was error for the district court to grant summary judgment.

Affidavits of the appellant establish the existence of not insignificant commercial sales of bin activators with non-conforming internal and external surfaces. The appellees even produced some of these bin activators. This raises the substantial probability that the novel feature of the design patent is not the "identical feature" that produces the utilitarian function.

There may be a novel patentable advantage to the peculiar design exterior which is unrelated to the mechanical interior. The present record simply cannot resolve this question.[10]

Though appellants have a very strong factual case in their favor, we are not holding on the present record that it would clearly be reversible error to make a finding of double patenting. At a minimum on the present record the issue is at least one which requires a fact finder's careful evaluation of the evidence before the conclusion of double patenting would be permissible. The standard for double patenting in a design/utility context cannot be too rigorous because of the necessary incongruity between inventions in the two areas. It is clear that appellants' ability to posit hypothetical nonconforming devices which would infringe one patent and not the other does not defeat summary judgment. The court in *Thorington*, 418 F.2d at 537 & n.10, rejected a similar claim which, if adopted generally, would prevent any finding of double patenting. It is always possible to conjure designs that will not be associated with the mechanical claim. Moreover, the fact that appellants have provided affidavits showing that these hypothetical devices are commercially feasible is not necessarily determinative. However, here the record does not consist of mere hypothesis devoid of reality. Instead, here we have the record of the actual market place associated with the mechanical claim. Whether the record establishes double patenting is a subtle question of fact concerning the unique inventive contribution of each patent that

---

tures were part of the novel contribution of the patent and there were numerous variations consistent with the design patent that would not replicate these features. 601 F.2d at 911–12.

10. Appellants also argue that the gyrator and the means for suspending the device are unique features included in the utility patent and are not necessarily implied by the design patent. We think this question is also better left for consideration by the trier of fact in the first instance.

We recognize that other evidence may on remand support an opposite conclusion. Wahl

apparently conceded in response to one question on the differences between the two patents that there was "[o]nly one difference, really, that is apparent from the sketchy presentation in the [design] patent, and that has to do with the baffle." Deposition of Eugene Wahl, May 19, 1977, *reprinted in* App., at 449a. Rexnord's expert, Don Fisher, also stated via affidavit that the only difference was in the baffle. Affidavit of Eugene Fisher, June 22, 1978, *reprinted in* App., at 70a. Neither apparently considered evidence of commercial sales of non-conforming interior and exterior walls.

must be considered in the first instance by the trier of fact.

## V.

For these reasons we will reverse the grant of summary judgment by the district court and remand for further proceedings not inconsistent with this opinion.

Rosenn, Circuit Judge, concurred and filed opinion.