**Olive T. WIBLE, Administratrix of the Estate of Virginia L. Wible, a/k/a Virginia Lynn Wible, Deceased**

v.

**LUMBERMENS MUTUAL CASUALTY COMPANY.**

**Civ. A. No. 80–2987.**

United States District Court, E. D. Pennsylvania.

Sept. 18, 1981.

Bruce W. Miller, Philadelphia, Pa., for plaintiff.

Dean F. Murtagh, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

BECHTLE, District Judge.

This is a diversity action brought by the plaintiff, Olive T. Wible, as Administratrix of the Estate of her deceased daughter, Virginia Lynn Wible, seeking to recover the proceeds from a Group Travel Accident Insurance Policy covering her daughter. The

policy was issued by the defendant, Lumbermens Mutual Casualty Company ("Lumbermens"). Presently before the Court is defendant's motion for summary judgment. For the reasons which follow, defendant's motion will be granted and judgment will be entered in favor of defendant.

On February 4, 1979, Lumbermens agreed to insure the decedent, Virginia Lynn Wible, pursuant to the Group Travel Accident Insurance Policy. The insurance was provided to Ms. Wible as an employment benefit by the Southeastern Pennsylvania Transportation Authority ("SEPTA"). The policy specifically provided SEPTA employees with coverage for injuries, sustained during the course of employment, which directly resulted from unprovoked criminal assaults and batteries, either on or off the premises of SEPTA. At approximately 9:05 P.M. on February 22, 1979, while operating a SEPTA trolley, Ms. Wible was attacked by three unknown assailants. Posing as passengers, one of the assailants drew a knife and stabbed her in the neck. Ms. Wible underwent surgery that evening and was hospitalized until her release on March 2, 1979. She never returned to work as a SEPTA trolley operator. On September 7, 1979, Ms. Wible committed suicide by ingesting an overdose of prescription drugs—phenobarbital, diazepam and dismethyldiazepam. The fact of the suicide is undisputed by both parties in this case. Plaintiff, as Administratrix of Ms. Wible's Estate, now seeks to recover the sum of $60,000.00 provided for by the insurance policy as payment for losses resulting from death.

A motion for summary judgment pursuant to Fed.R.Civ.P. 56 may be granted only "if there are no remaining issues of material fact which, if believed by the trier of fact, would justify a finding for the party opposing that judgment." *Wahl v. Rexnord, Inc.*, 624 F.2d 1169, 1181 (3d Cir. 1980). Lumbermens does not dispute the fact that Ms. Wible was attacked during the course of her employment as a SEPTA employee in February, 1979. Nor is it disputed by either party that Ms. Wible committed suicide through an overdose of drugs approximately six months afterward, in September, 1979. The issue presently before the Court is a matter of contract interpretation. The issue succinctly stated is whether the death of Ms. Wible, as a matter of law, is covered by the insurance policy.[1]

Under the insurance policy, Lumbermens agreed to insure the members and employees of SEPTA "against specified losses . . . , which losses *resulted directly and independently of all other causes* from hazards as defined in the attached Hazard Description Page(s)." (Emphasis added). The "Special Hazard Description Page for Southeastern Pennsylvania Transportation Authority" provides: "Coverage shall be limited to unprovoked felonious assault and battery and all criminal acts, including those injuries sustained directly as a result of any kidnapping or felonious assault as a result of holdups, robbery or burglary on or off the Premises of the Policyholder." Furthermore, under the "Accidental Death Coverage," the policy provides: "When as a result of bodily injury *caused solely* by accident, the Insured Person suffers loss of life, the Company will pay the Principal Sum stated in the Declarations applicable to the Insured Person." (Emphasis added).[2] However, dispositive of this case is Part VI of the policy, entitled "General Exclusions," which specifically provides:

> This Policy does not cover losses, fatal or non-fatal, caused by or resulting from:
> 1. Suicide while sane or insane or intentionally self-inflicted injury.

Lumbermens now argues that the death of Ms. Wible is not covered by the insurance policy because death did not "result directly and independently of all other causes" from the felonious assault. Specifically, Lumbermens points to the suicide exclusion because Ms. Wible's death resulted from the inten-

---

1. For purposes of this motion, it is assumed that Ms. Wible was eligibly insured at the time of her death.

2. The Declarations, as amended, provide for the payment of $60,000.00 in the event of Accidental Death.

tional ingestion of an overdose of prescription drugs. Neither party disputes the fact that Ms. Wible committed suicide. Plaintiff argues instead that Ms. Wible's death directly resulted from the February, 1979, attack because the suicide was merely a link in the chain of events which resulted in her death. Plaintiff is prepared to present the testimony of Dr. Joshua H. Werblowsky that the attack was the substantial cause of Ms. Wible's death and that she would not have committed suicide but for the assault. (Deposition of Werblowsky, at 16). Dr. Werblowsky will testify that "the stabbing led to her—to the development of a post-traumatic stress disorder with a clinical depression and clinical anxiety and her feeling hopelessness in terms of her job, and suicide was the direct result of that." (Deposition of Werblowsky, at 17). Even if this theory of proximate causation is provable and correct, the Court holds as a matter of law that the death of Ms. Wible is not covered under the insurance policy because of the expressed exclusion for suicidal deaths.

 Under general principles of insurance law, an insurance policy must be read as a whole and interpreted according to the plain meaning of its terms. *C. H. Heist Caribe Corp. v. American Home Assurance*, 640 F.2d 479, 481 (3d Cir. 1981). In all matters involving contracts, unambiguous writings are to be interpreted by the Court as a matter of law. *Brokers Title Co. v. St. Paul F & M Insurance Co.*, 610 F.2d 1174, 1178 (3d Cir. 1979).

 In the present case, the plain meaning of the printed terms is readily apparent and clear. Under the policy, injuries which "result directly" from an unprovoked felonious criminal assault are compensable and payment will be made if death "caused solely by accident" results. Nevertheless, if the loss of life is caused by suicide, such losses are not covered under the insurance policy. In examining the contract as a whole, which the Court must do in order to determine the intent of the parties, *Central Dauphin School District v. American Casualty*, 271 Pa.Super. 218, 412 A.2d 892, 894 (1979), the Court finds that the stated coverage

under the "Special Hazard Description Page" as incorporated in the first paragraph of the insurance policy, together with the provision for "Accidental Death Coverage," is consistent with Part VI, entitled "General Exclusions," and no ambiguity results when the policy is read as a whole. The exclusionary provision clearly provides that losses resulting from suicide are not covered under the insurance policy. The death of Ms. Wible was not a "result of bodily injury caused *solely* by accident." It is undisputed that she committed suicide.

Plaintiff cites *Ott v. Traveler Insurance Co.*, 24 Pa.Dist. 162 (Ct. Common Pleas 1914) in support of her position that the insurance company may be held liable. In that case, the insurance policy contained an almost identical proviso excluding suicide from coverage as found here. The death of the insured, the complaint alleged, resulted from the insured shooting himself with a revolver while mentally deranged and unconscious because of injuries sustained to the body and head in an accident the preceding day. Denying defendant's demurrer to the complaint, the Pennsylvania Court of Common Pleas held that there is a "distinction between an insane impulse that causes an injury and an injury that causes an insane impulse" and found liability at that stage of the proceedings. Plaintiff additionally analogizes the present case to case law in the areas of criminal law and tort in which defendants are held responsible for the suicides of their victims which resulted from defendants' bad acts. *See Stephenson v. State*, 205 Ind. 141, 179 N.E. 633 (1932) (criminal law); *Fuller v. Preis*, 35 N.Y.2d 425, 322 N.E.2d 263, 363 N.Y.S.2d 568 (1974) (tort).

The court's holding in *Ott v. Travelers Insurance Co., supra*, however, even if its reasoning was ultimately held to be correct by the Pennsylvania Supreme Court, is readily distinguishable from the present case. In *Ott*, the court was obviously influenced by the fact that the decedent committed suicide the day immediately after the accident because of delirium which resulted from injuries to the head. In the present

case, the decedent committed suicide almost six months after the infliction of the injury. Furthermore, the decedent in this case had been hospitalized and later released within one week following treatment. Secondly, the Court believes that analogies to tort and criminal law are neither controlling nor persuasive in this case. The parties are bound by the terms of the insurance contract which, in this case, are clear and unambiguous, and not by the concept of proximate causation.

Most certainly the facts of the stabbing and subsequent suicide are indeed tragic. The policy, however, specifically excluded from coverage any death which was caused by suicide. The parties are bound by the terms of their contract. Accordingly, Lumbermens is entitled to summary judgment and an entry of summary judgment in its favor because the contract, as a matter of law, excludes the instant death and attendant losses from coverage in this case.

An appropriate Order will be entered.