## In re CENDANT CORPORATION DERIVATIVE ACTION LITIGATION.

### No. 98CV1998.

United States District Court, D. New Jersey.

April 14, 2000.

Bruce Gerstein Garwin, Bronzaft, Gerstein & Fisher, Barry S. Taus, Brett Cebulash, Kevin S. Landau, Garwin, Bronzaft, Gerstein & Fisher. L.L.P., New York City, Elwood S. Simon, John P. Zuccarini, Elwood S. Simon & Associates, P.C., Birmingham, MI, for Plaintiff Martin Deutch.

Carl Greenberg, Michael M. Rosenbaum, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., Short Hills, NJ, Jonathan J. Lerner, Jerome S. Hirsch, Samuel Kadet, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, for Defendant Cendant Corp.

Herbert J. Stern, Stephen M. Greenberg, Joel M. Silverstein, Stern & Greenberg, Roseland, NJ, James G. Kreissman, Michael J. Chepiga, Jacob S. Putman, Sasha A. Smith, Simpson Thacher & Bartlett, New York City, for HFS Defendants.

Steven S. Radin, Sills Cummis Zuckerman Radin Tichman Epstein & Gross, Newark, NJ, Greg A. Danilow, Timothy A. Greensfelder, Weil, Gotshal & Manges LLP, New York City, Dennis J. Block, Howard R. Hawkins, Jr., Cadwalader, Wickersham & Taft, New York City, for CUC Defendants.

Richard Schaeffer, Bruce Handler, Dornbush Mensch Mandelstam & Schaeffer, LLP, New York City, for Defendant E. Kirk Shelton.

Anne M. Patterson, Riker, Danzig, Scherer, Hyland & Perretti, LLP, Morristoen, NJ, Daniel J. Beller, Brad S. Karp, Michael E. Gertzman, Jennifer L. Romer, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Defendant Amy N. Lipton.

Kathleen H. Dooley, Shanley & Fisher, P.C., Morristown, NY, Paul C. Curnin, Simpson Thacher & Bartlett, New York City, for Defendant Bear Stearns & Co., Inc.

Donald A. Robinson, Leda Dunn Wettre, Robinson, Lapidus & Livelli, Newark, NJ, Gary P. Naftalis, Alan R. Friedman, Kramer Levin Naftalis & Frankel LLP, New York City, for Defendant Cosmo Corigliano.

## Introduction

WALLS, District Judge.

Derivative action plaintiff moves for partial summary judgment against the individual defendants named in his first amended complaint under Section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f). Plaintiff seeks a ruling that the individual director defendants violated Section 11 and are liable to Cendant Corporation for contribution under Section 11(f) for monies (to be) paid out in the proposed class action settlement. Plaintiff also urges the Court to conclude that the proposed settlement is an illegal indemnification of the individual class action defendants by Cendant.[1] Defendants E. Kirk Shelton; Henry Silverman, Martin Edelman, John Snodgrass,

---

1. Plaintiff describes the (as yet unapproved) settlement: "In exchange for $2.83 billion entirely from the Company's coffers, the Individual Defendants will be given a complete release from all claims.... Moreover, and significantly, the Individual Defendants will receive these releases even though their proportionate fault was never determined.... The approval of the settlement will also result in the class releasing the Company's *former* directors and officers from liability." Brf. at 17–18.

James Buckman, Michael Monaco, Stephen Holmes, Robert Kunisch and E. John Rosenwald, Jr. (the "HFS defendants"); Bartlett Burnap, T. Barnes Donnelley, Walter Forbes, Christopher McLeod, Burton Perfit, Stanley Rumbough, Jr., and Robert Tucker (the "CUC defendants"); and nominal defendant Cendant Corporation oppose this motion.

### Analysis

#### A. Section 11

Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, provides for damages caused by a false or misleading registration statement. *See generally In re Cendant Corp. Litig.*, 60 F.Supp.2d 354, 362–64 (D.N.J.1999). If the registration statement "contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading," then "any person acquiring such security" may sue a number of enumerated individuals and entities. 15 U.S.C. § 77k(a). In particular, acquirers of the security may sue:

> (1) every person who signed the registration statement; (2) every person who was a director of (or person performing similar functions) or partner in the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted; (3) every person who, with his consent, is named in the registration statement as being or about to become a director, person performing similar functions, or partner; (4) every accountant, engineer, or appraiser, or any person whose profession gives authority to a statement made by him, who has with his consent been named as having prepared or certified any part of the registration statement, or as having prepared or certified any report or valuation which is used in connection with the registration statement, with respect to the statement in such registration statement, report, or valuation, which purports to have been prepared or certified by him; (5) every underwriter with respect to such security.

15 U.S.C. § 77k(a). Section 11 does not require a showing of intent or scienter of that person.

However, Section 11(b) provides an affirmative defense to liability under § 11(a): "[N]o person, other than the issuer, shall be liable ... who shall sustain the burden of proof" that "he had, after reasonable investigation, reasonable ground to believe and did believe, at the time such part of the registration statement became effective, that the statements therein were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading...." 15 U.S.C. § 77k(b)(3).

> Section 11(f) states:
>
> (1) Except as provided in paragraph (2), all or any one or more of the persons specified in subsection (a) of this section shall be jointly and severally liable, *and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment,* unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.
>
> (2)(A) The liability of an outside director under subsection (e) of this section shall be determined in accordance with section 78u–4(f) of this title.
>
> (B) For purposes of this paragraph, the term "outside director" shall have the meaning given such term by rule or regulation of the Commission.

*Id.* (emphasis added).

#### B. Timeliness of Suit

*Defendants*[2] dispute plaintiff's ability to sue for the harms alleged in the motion for

---

**2.** "Defendants" refers to all defendants who oppose this motion. "Individual defendants" excludes nominal defendant Cendant Corp.

summary judgment. The individual defendants contend that a motion for contribution under Section 11(f) is not ripe because any right to contribution is inchoate until a defendant pays more than his or her share of a judgment or settlement. For example, the statute of limitations on an action for contribution does not begin to run until liability has been adjudged and excess payment has been made. *See, e.g., Ades v. Deloitte & Touche,* 1993 WL 362364, at *15 (S.D.N.Y. Sept. 17, 1993). Here, they argue, the settlement has not been approved by the Court; Cendant's obligation to pay has not yet accrued. Defendants add that any objection to the settlement as "illegal" is best brought up as an objection to settlement, not as a "new" derivative action claim.

Plaintiff avers that the motion should be resolved pre-settlement because the settlement is "probable" and "reasonably estimable." Reply Brf. at 22. He posits that Cendant has already "written off the $2.83 billion charge as an expense in its 1999 income statement." He further argues that the issue of illegal indemnification should be determined before the settlement becomes effective. Plaintiff also remarks that because, according to defendants, outside directors are immune from Section 11 contribution actions post-settlement, the issue should be addressed now.

■ As noted by the Third Circuit in *Sea–Land Service, Inc. v. United States of America,* 874 F.2d 169, 171 (3d Cir.1989), a cause of action for contribution does not arise until the party seeking contribution has paid more than his or her fair share of a common liability. *See also Ades,* 1993 WL 362364, at *15–16 (third party plaintiff's claim for contribution arises after direct defendant pays judgment entered against him). Cendant has not yet paid class action plaintiffs.

■ Further, the Court finds unavailing plaintiff's argument that contribution is ripe for consideration because Cendant has already set aside the settlement sum—the realization of settlement depends on more. Plaintiff cannot ignore the Court's duty to scrutinize the settlement and hear objections before the settlement is approved. The issue of illegal indemnification (and any other objection to settlement) is best raised after all parties and the Court have had a chance to conduct a substantive review of the settlement and hear any objections. In sum, plaintiff has no present contribution claim because (1) the settlement has not been approved by the Court and (2) Cendant has no current obligation to pay.

In the alternative, even if the contribution action is considered timely, plaintiff cannot pursue a cause of action for contribution without satisfying certain other procedural requirements.

### C. Pleading a Section 11(a) or Section 11(f) claim

■ Defendants argue that plaintiff cannot recover on claims never plead. They correctly state that plaintiff's derivative action complaint consists of three state law claims for: (1) breach of fiduciary duty by the individual defendants for insider selling and misappropriation of corporate information; (2) breach of fiduciary duty for "waste of corporate assets, mismanagement, [and] gross negligence," Cmpt. ¶ 193; and (3) gross negligence. No federal securities claims are included in the complaint and the complaint cites party diversity as its only jurisdictional basis. Nominal defendant Cendant urges "[a] motion for summary judgment is not the proper place to present new claims which, in effect, amend the complaint." CD Brf. at 9 (citing numerous cases in support).

Plaintiff relies on the liberal thrust of Federal Rule of Civil Procedure 8: "[P]ursuant to [Rule 8], a legal theory is not necessary if the plaintiff sets forth 'sufficient factual allegations to state a claim showing that he is entitled to relief' under some cognizable legal theory." Plaintiff responds that he has set forth "sufficient factual allegations to state a claim that he [as a derivative action plaintiff] is entitled to relief" under Section 11(f), *Beckman v.*

*United States Postal Serv.,* 79 F.Supp.2d 394, 407 (S.D.N.Y.2000); *see also* Fed. R.Civ.P. 8, because (1) the complaint allegedly references plaintiff's desire to recoup losses that will be sustained in the Cendant class action lawsuit, and (2) the elements of a Section 11(a) claim are plead. Reply Brf. at 24–25.

The complaint contains the following statements: "These [federal securities] Class action lawsuits expose the company to enormous liability," Cmpt. ¶ 172; "the Individual Defendants' wrongdoing has exposed and will expose the Company to enormous legal liability," ¶ 156; "By reason of the Individual Defendants' misconduct ... Cendant has suffered damages in an amount not presently determinable but which is expected to be in the hundreds of millions of dollars. As a result of the conduct alleged herein, the Individual Defendants are monetarily liable to the Company," ¶¶ 195–96. Additionally, plaintiff's prayer for relief seeks judgment "[a]gainst each Individual Defendant and in favor of the Company for the damages sustained by the company as a result of the breaches of fiduciary duty by each Individual Defendant." Cmpt. p. 75, ¶ B.

Plaintiff first contends that "[c]ontribution [under Section 11(f) ] is simply a vehicle of recovery for a [Section 11(a) ] claim that is plainly and repeatedly alleged in the Complaint." Reply Brf. at 24. Plaintiff references this Court's previous description of the derivative action complaint to support his contention that defendants were on notice that a Section 11 claim was contained therein. 189 F.R.D. at 122–127.

The Court is as surprised as defendants to see a motion for summary judgment of liability under Section 11 in this action. Upon examination of the complaint, the Court finds that a reasonable person would read it as stating only state law breach of duty claims against the individual director defendants on behalf of the corporation. Even if read liberally, no federal securities law claims are contained therein.

Plaintiff next contends that a section 11(f) claim for contribution was plead directly. However, even if the Court assumes that a violation of Section 11(a) by Cendant directors at the time of merger is sufficiently plead-i.e., issuance of false statements in the Registration Statement without due diligence—the Court cannot read into the complaint a cause of action for contribution. As stated by the HFS defendants, "the Amended Complaint is devoid of any allegation ... that plaintiff, standing in the shoes of Cendant, is entitled to seek contribution ... pursuant to Section 11(f) of the 1933 Act." HFS Brf. at 9.

At the time of filing of the derivative action complaint, contribution was at most an inchoate right, and remains so to this day. Plaintiff's complaint focuses on events which occurred in April 1998, not between March 2000 and the present. No mention is made of Cendant's recent announcement of the proposed settlement or facts related to its decision to settle. The present complaint references Cendant's potential class action liability merely to illustrate the depth of the individual defendants' alleged breaches of fiduciary duty. If this Court were to read the passages asserted by plaintiff to contain a Section 11(f) claim, almost any derivative action for breach of fiduciary duty would necessarily contain a silent Section 11 contribution claim. The Court cannot read into the complaint causes of action linked to events which occurred two years after the alleged injury to Cendant.

**D. Decision to Settle**

Moreover, plaintiff's decision to seek contribution under Section 11(f) through the use of a derivative action, rather than by directly challenging the settlement's structure as a class action member, complicates the analysis. Plaintiff's memorandum of law avers that by settling the class action with company money, the company will "illegally indemnify [the Individual Defendants] for their violations of the federal securities laws." Brf. at 29. Plaintiff essentially accuses the present Cendant

board of breaching its duty to the company by entering into an illegal settlement, harmful to the company by forcing it to pay for others' errors.

Like the Section 11 claims, this claim is not plead in the derivative action complaint. As said, the complaint, which focuses on the HFS/CUC merger, does not address Cendant's decision to settle or the structure of the settlement.[3] Further, half of the current Cendant board members (Coleman, Mulroney, Nederlander, Pittman, Schultzman, Smith and Hankin) are not defendants in the derivative action. As shown below, plaintiff's contribution action, undertaken through a derivative action, is presently unable to proceed for failure to satisfy Fed.R.Civ.P. 23.1.

### A. Law of Demand

A derivative suit allows an individual shareholder to bring a suit to "enforce a corporate cause of action against officers, directors, and third parties." *Ross v. Bernhard,* 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24 L.Ed.2d 729 (1970); *see also generally In re Cendant Corp. Derivative Action Litig.,* 189 F.R.D. 117, 126–28 (D.N.J.1999). The purpose of such an action is "to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (quoting *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949)). "To prevent abuse of this remedy, however, equity courts established as a precondition 'for the suit' that the shareholder demonstrate 'that the corporation itself had refused to proceed after suitable demand, unless ex-

cused by extraordinary conditions.'" *Kamen,* 500 U.S. at 96, 111 S.Ct. at 1716 (citing *Ross* 396 U.S. at 534, 90 S.Ct. at 736).

Federal Rule of Civil Procedure 23.1 requires that a derivative complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reason for the plaintiff's failure to obtain the action or for not making the effort." Fed.R.Civ.P. 23.1. "[T]he substantive requirements of demand are a matter of state law." *Blasband v. Rales,* 971 F.2d 1034, 1046 (3d Cir.1992) (citing *Kamen,* 500 U.S. at 96, 111 S.Ct. at 1716). Here Delaware law governs the demand requirement. *See generally In re Cendant Corp. Derivative Action Litig.,* 189 F.R.D. 117, 126–28 (D.N.J.1999).

Under Delaware law, "the decision to bring a lawsuit or to refrain from litigating a claim on behalf of the corporation is a decision concerning the management of the corporation and consequently is the responsibility of the directors." *Blasband,* 971 F.2d at 1047 (citing *Levine v. Smith,* 591 A.2d 194, 200 (Del.1991), *modified in part, Brehm v. Eisner,* 746 A.2d 244 (2000)); *Spiegel v. Buntrock,* 571 A.2d 767, 773 (Del.1990). Because "the derivative action impinges on the managerial freedom of directors," the demand requirement "exists at the threshold, first to insure that a stockholder exhausts his intracorporate remedies, and then to provide a safeguard against strike suits." *Aronson v. Lewis,* 473 A.2d 805, 811–812 (Del.1984), *modified in part, Brehm v. Eisner,* 746 A.2d 244 (2000); *Blasband,* 971 F.2d at 1048.

---

**3.** Another issue which stems from any argument that the current board breached its duty to the company by recommending an "illegal" settlement is the liability of those individual directors who are no longer Cendant board members for approving the settlement. E. Kirk Shelton and the CUC defendants state that they "did not authorize the settlement to be paid by Cendant, and cannot be held responsible for a decision that was reached by Cendant long after they resigned their positions." CUC Brf. at 6; EKS Brf. at 18. This argument was left unanswered by plaintiff who instead focuses on the alleged harm to Cendant caused by the actions of these defendants while board members.

■ Demand may be excused if futile. In *Aronson,* the Delaware Supreme Court defined a two-part test to evaluate a claim of demand futility. *Aronson,* 473 A.2d at 814. As restated by the Delaware Supreme Court in *Levine,*

> [i]n determining the sufficiency of a complaint to withstand demand futility ... [t]he trial court is confronted with two related but distinct questions: (1) whether threshold presumptions of director disinterest or independence are rebutted by well-pleaded facts; and, if not, (2) whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment.

*Levine,* 591 A.2d at 205; *Aronson,* 473 A.2d at 814; *Blasband,* 971 F.2d at 1048. The entire review is factual in nature, and in order that demand be excused, the trial court "must be satisfied that a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt" as to a director's interest or independence or that the challenged transaction was the product of a valid exercise of business judgment. *Aronson,* 473 A.2d at 814; *Rales v. Blasband,* 634 A.2d 927, 936 (Del. 1993). Further, it is insufficient to allege that one member's independence is compromised. To bypass demand, plaintiff must plead that a majority of the board is interested. *See, e.g., Abrams v. Koether,* No. 91–2809, 1992 WL 295195, at * 5 ("[A] majority of the board must be 'interested', i.e. on both sides of a transaction"); *see also Levine,* 591 A.2d at 200.

Defendants contend that the question of whether Cendant should pursue the Section 11(f) contribution claim was never brought to Cendant's board and plaintiff has failed to satisfy Fed.R.Civ.P. 23.1 by pleading either steps taken to bring the issue to the board or reasons for bypassing the board. Defendants assert that even if plaintiff has satisfied Rule 23.1 and alleged demand futility, the Court cannot now conclude that demand is futile. They aver: (1) only seven of the fourteen current board members face potential Section 11(f) liability; and (2) three[4] of these seven defendants are arguably "outside directors" statutorily exempted from Section 11(f) contribution claims by the Private Securities Litigation Reform Act ("PSLRA"). *See* 15 U.S.C. § 78u–4(f)(7)(A) (a "covered person who settles ... shall be discharged from all claims for contribution"); § 78u–4(f)(10)(C) (a "covered person" is "a defendant in any private action arising under [Section 11], who is an outside director of the issuer of the securities that are the subject of the action").

Plaintiff answers that "demand would be plainly futile."[5] Reply Brf. at 27. He states that thirteen of fourteen Cendant board members are defendants in the settling class action and thus suffer from "divided loyalties" because they have a personal interest in approving a settlement that allegedly exempts them from all financial harm. Plaintiff also cites to this Court's earlier decision in this matter. 189 F.R.D. at 129.

That decision, which treated different derivative action claims, found that plaintiff had satisfied Fed.R.Civ.P. 23.1, which requires any demand or futility of demand on the board to be plead with particularity. The Court found that sixteen of Cendant's then twenty-eight directors had been named as derivative action defendants, thus these sixteen members (over half of the board) suffered from "divided loyalties." The Court added that "each of the sixteen Director [derivative action] Defendants is interested because he is a defendant in other pending class action suits arising out of the accounting irregularities and faces significant personal liability for the wrongdoing alleged in the complaint."

---

4. Edelman, Kunisch and Snodgrass.

5. Plaintiff does not address the second step of the futility inquiry: Whether the complaint pleads particularized facts sufficient to create a reasonable doubt that the challenged transaction was the product of a valid exercise of business judgment. *Levine,* 591 A.2d at 205; *Aronson,* 473 A.2d at 814.

189 F.R.D. at 128–30. The Court did not consider relevant the status of other board members in the then-pending class action.

■ Futility is determined by looking to the composition of the board at the time the derivative action claim is asserted. *In re Fuqua Indus., Inc. Shareholder Litig.,* 1997 WL 257460, at *13 (Del.Ch. May 13, 1997). The Court finds that the cause of action for contribution did not arise at the time of merger, rather it may arise when and if Cendant pays more than its "fair share" of the settlement. Here half of Cendant's current board members are not defendants in the derivative action (seven of fourteen). Plaintiff's contention that over half of the current board (thirteen of fourteen) is interested because they are class action defendants misreads the scope of this court's earlier decision regarding demand futility. The "old" board was interested (1) because sixteen of twenty-eight were named as *derivative action defendants; and* (2) *those* defendants were *also* class action defendants who allegedly personally benefitted from the merger and/or engaged in insider sales. 189 F.R.D. at 129. Plaintiff has not plead that a majority of Cendant's present board is interested. As discussed, half of the current board, not a majority, is interested. *See, e.g., Abrams v. Koether,* No. 91–2809, 1992 WL 295195, at * 5 ("[A] majority of the board must be 'interested' "); *see also Levine,* 591 A.2d at 200. Plaintiff's reli-

ance on the previous decision which addressed earlier board membership is factually irrelevant.

■ Additionally, the Court takes judicial notice[6] that effective March 31, 2000, class- and derivativeaction defendants Kunisch and Snodgrass resigned from Cendant's board. *See* "Cendant is Moving to Restructure Its Board," N.Y. Times, April 6, 2000, at C11. Their seats were filled by two disinterested parties—Myra Biblowit of New York University and Sherli Rosenberg of Equity Group Investments, Inc. *See id.* Therefore, of Cendant's present board, only five of fourteen directors are named as defendants in this derivative action.[7]

In response to defendants' contention that the three outside directors (two of whom have now resigned) are impartial because immune from Section 11(f) liability, plaintiff takes issue with their classification as outside directors because both Snodgrass and Kunisch were HFS management and Edelman, by his business dealings and legal work for the company, "has the indicia of an inside director." Plaintiff also disputes defendants' blanket conclusion that all outside directors are exempt from Section 11(f) contribution actions because "covered persons" who "knowingly committed a violation of the securities laws" remain jointly and severally liable for "final judgments" (§ 78u–

6. Fed.R.Evid. 201 authorizes a court to take judicial notice of facts "not subject to reasonable dispute" because either: (1) generally known within the court's territorial jurisdiction; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See also In re Prudential Ins. Co. of America Sales Practices Litigation,* 962 F.Supp. 450, 496, *aff'd in relevant part,* 148 F.3d 283 (3d Cir. 1998).

7. Plaintiff objected to the Court's judicial notice of the New York Times article. The Court has examined the cases cited by plaintiff and finds they are distinguishable from the present situation. Specifically, *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del.1981), and related cases addressed situations where a new board of directors decided to terminate an ongoing suit. Here plaintiff's Section 11 claims were not included in his original complaint.

*Herbst v. International Tel. & Tel. Corp.,* 72 F.R.D. 85 (D.Conn.1976), involved a direct challenge to settlement by plaintiffs, not a challenge though a derivative action. The *Herbst* court rejected a general release that would have the effect of terminating an ongoing derivative suit. Here it appears that the derivative suit would not be terminated even if the Court were to approve a contribution bar because plaintiff would still have the ability to pursue breach of duty claims on behalf of Cendant. Moreover, this concern is best raised in a direct challenge to settlement, as it was in *Herbst.*

4(f)(2)(A)) and because "the PSLRA did not modify the express right to contribution [under 11(f)]." Pl. Brf. at 19–20. Rather, it only stated that outside directors' maximum contribution is capped by their proportionate fault. *Id.*

The Court leaves this interesting issue for another day. This Court concludes that a majority of the current board is not interested because not exposed to contribution liability through plaintiff's derivative action and demand excused. The individual defendants' arguments regarding the impartiality of the three settling "outside directors" under the PSLRA need not be addressed.

### E. Summary Judgment

In the alternative, if plaintiff's motion for summary judgment could be addressed on the merits, summary judgment would remain inappropriate.

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. *See id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett,* 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Wahl v. Rexnord, Inc.,* 624 F.2d 1169, 1181 (3d Cir. 1980).

Plaintiff relies primarily on the complaint filed by the HFS defendants against Ernst & Young ("E & Y") to sustain his burden of proof. He references statements in the complaint that purport to admit that misstatements in the Registration Statement could have "easily" been discovered through reasonable investigation. Reply Brf. At 2. Plaintiff also contends that he is entitled to summary judgment because defendants intentionally misrepresented the nature of the due diligence performed pre-merger.

Defendants object to plaintiff's arguments on the merits of the motion for different reasons. The CUC defendants state that plaintiff presents no evidence that they violated Section 11 because plaintiff's case "is built solely upon alleged admissions of the *HFS* Defendants." CUC Brf. at 10. The CUC defendants further argue that "there are serious issue of material fact that preclude any judgment against the CUC Defendants . . . (1) the CUC Defendants' reasonable reliance on the company's auditors with respect to CUC/Cendant's financial statements; and (2) the CUC Defendants' good faith belief that CUC/Cendant's financial statements were accurate . . . (i.e., their due diligence immunity)."

E. Kirk Shelton, a former CUC Chief Operating Officer, also argues that the "admissions" in the E & Y complaint are irrelevant-"Plaintiff's purported factual showing . . . amounts to nothing more than the completely erroneous and misleading effort to impute to Mr. Shelton 'admissions' contained in the Silverman complaint." EKS Brf. at 11. Shelton further contends that he can rely on Section 11(b)'s due diligence defense and that plaintiff has failed to present evidence that this defense should be overcome.

The HFS defendants also address plaintiff's arguments. Regarding the alleged "promise" to conduct investigation contained in the Registration Statement, they first argue that this is a selective quotation from the Merger Agreement attached to the Registration Statement. They contend that in the agreement both parties merely promised to allow "reasonable access" to information during the period leading up to the merger. Merger Agmt. § 5.4. HFS adds that CUC invoked the "reasonable access" clause when it refused to allow HFS access to nonpublic information pre-merger.

In reply to plaintiff's use of the E & Y complaint, the HFS defendants claim that plaintiff has misstated allegations made in that pleading. HFS states that the "complaint alleges that had a proper *audit* been conducted ... some portion of the accounting irregularities would have been discovered." HFS Brf. at 33. Plaintiff, they argue, has "conflat[ed] the different standards for due diligence and audits." *Id.* Because the E & Y complaint does not establish Section 11 liability, the HFS defendants assert that "there are genuine issues of material fact both as to plaintiff's prima facie case and as to the HFS Defendants' affirmative defenses" for the expertised and unexpertised portions of the Registration Statement. HFS Brf. at 26.

■ The Court finds that disputed issues of material fact exist as to all defendants' Section 11 liability, including whether: (1) individual defendants reasonably relied on their auditors; (2) they had a good faith belief that expertised and unexpertised portions of financial statements were accurate when issued; (3) certain officers and directors reasonably relied on reports of subordinates; and (4) access provided by CUC to HFS pre-merger was accurately reported in the Registration Statement. Summary judgment is inappropriate at this stage.

## CONCLUSION

For the reasons stated, plaintiff's motion for summary judgment against the individual defendants named in his first amended complaint under Section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f), is denied.

## ORDER

Derivative action plaintiff moves for partial summary judgment against the individual defendants named in its first amended complaint under Section 11(f) of the Securities Act of 1933, 15 U.S.C. § 77k(f). After due consideration and for good cause shown:

It is on this day of April, 2000,

ORDERED that plaintiff's motion is denied.